ROBERT E. OPERA – California State Bar No. 101182
ropera@wcghlaw.com
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100/Facsimile: (949) 720-4111

STEPHEN R. HARRIS – Nevada State Bar No. 001463
steve@harrislawreno.com
**HARRIS LAW PRACTICE LLC**
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600

[Proposed] General Insolvency Counsel
for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>X-TREME BULLETS, INC., a Nevada corporation,<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 18-50609-btb<br><br>Chapter 11 Proceeding<br><br>**DECLARATION OF DAVID C. HOWELL IN SUPPORT OF DEBTOR'S MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES**<br><br>[11 U.S.C. § 105; Fed. R. Bankr. P. 1015; LR 1015(g) and 3001(c)]<br><br>DATE:<br>TIME:<br>EST. TIME FOR HEARING:<br>PLACE:   Courtroom 2 (5th Floor)<br>              C. Clifton Young Federal Bldg.<br>              300 Booth Street<br>              Reno, NV 89509 |

## DECLARATION OF DAVID C. HOWELL

I, David C. Howell, declare and state:

1. The following matters are within my own knowledge and, if called as a witness, I could and would competently testify thereto.

2. This declaration is offered in support of the Motion for Order Authorizing Joint Administration of Related Case; Memorandum of Points and Authorities ("Motion") filed by X-Treme Bullets, Inc., a Nevada corporation. Capitalized terms not defined herein have the same meaning ascribed in the Motion.

3. On June 8, 2018, the Related Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

4. I am the principal of each of the Related Debtors. I own 95% of the issued and outstanding shares of stock in Howell Munitions & Technology, Inc. ("HMT"). HMT, in turn, is the sole shareholder of the following Related Debtors: X-Treme Bullets, Inc. ("X-Treme"); Clearwater Bullet, Inc. ("Clearwater"); Ammo Load Worldwide, Inc. ("ALW"); and Howell Machine. HMT owns 100% of the membership interests in Freedom Munitions, LLC ("Freedom"). I own 100% of the membership interests in Lewis-Clark Ammunition Components, LLC ("LCAC"), and 90% of the membership interests in Components Exchange, LLC ("Components Exchange").

5. A description of each of the Related Debtors and its operations is set forth hereinbelow.

    a. <u>HMT</u>. HMT is the parent company of Related Debtors X-Treme, Clearwater, ALW, Howell Machine and Freedom. While Related Debtors X-Treme, Clearwater, ALW, Howell Machine and Freedom are legal entities separate from HMT, such Related Debtors have operated at all times on a consolidated basis.

    b. <u>X-Treme</u>. X-Treme is a Nevada corporation located in Carson City, Nevada. X-Treme is in the business of manufacturing bullets. X-Treme's bullets are sold to wholesale customers and to online customers via the xtremebullets.com website. X-Treme holds a federal license to manufacture ammunition. X-Treme operates

from two buildings located in Carson City, Nevada, both of which are leased by HMT, and one of which is owned by me.

    c. <u>Clearwater</u>. Clearwater is in the business of manufacturing bullets. Clearwater's bullets are sold to wholesale customers and to online customers via the xtremebullets.com website. Clearwater operates from a facility located in Lewiston, Idaho which is leased by HMT from me.

    d. <u>ALW</u>. ALW is in the business of manufacturing ammoload machines and other machines for resale to third-party customers. ALW operates in Lewiston, Idaho from buildings leased by HMT from me.

    e. <u>Howell Machine</u>. Howell Machine is in the business of fabricating parts that are used to build the ammoload machines manufactured by ALW and to maintain the other machinery and equipment owned by the other Related Debtors. Howell Machine shares with ALW facilities in Lewiston, Idaho leased by HMT from me.

    f. <u>Freedom</u>. Freedom is in the business of selling ammunition. Freedom sells its products online via the freedommunitions.com website. Freedom also had a retail location in Houston, Texas that sold ammunition, but that location recently was closed.

    g. <u>LCAC</u>. LCAC is an Idaho limited liability company, but no longer conducts business operations. LCAC still owns machinery and equipment.

    h. <u>Components Exchange</u>. Components Exchange manufactures and assembles ammunition, and sells its ammunition and components to wholesale, original equipment manufacturers and online customers via its ammovalley.com and reloadingvalley.com websites. Components Exchange operates in Peck, Idaho from buildings leased from me.

6. In 2016, the Related Debtors started having financial difficulties. The causes of the Related Debtors' financial difficulties include the following:

    a. <u>Expansion of Operations</u>. In 2016, the Related Debtors were expanding rapidly with the purchase of two case manufacturing machines and the building of

supplemental machines to complete the case manufacturing process. The Related Debtors also were building ammoloading machines and other machines to enhance operations. The substantial cash outlays made by the Related Debtors in this regard proved to be a strain on the Related Debtors' liquidity

b. <u>Decline in Ammunition Marketplace</u>. In 2016, the Related Debtors built up inventory in anticipation that Hillary Clinton would win the presidential election in 2016 (<u>i.e.</u>, purchases of guns and ammunition generally increase during the administrations of Democratic presidents based upon some gun owners' concerns that Democratic administrations will impose stricter gun control laws). Other ammunition manufacturers similarly built increased inventories in anticipation of Ms. Clinton's winning the 2016 presidential election. When President Trump was elected, the demand for ammunition in the marketplace decreased significantly. With an oversupply of ammunition in the marketplace, the price of ammunition declined significantly.

c. <u>Employment of New President</u>. In January 2017, the Related Debtors hired Jansen Jones to serve as the president of the Related Debtors. Mr. Jones proved to be an unsatisfactory president. Mr. Jones resigned on or about February 18, 2018.

d. Thus, commencing in 2016, and in 2017, the Related Debtors were overburdened with debt based upon a ramping up of the Related Debtors' operations, had too much manufacturing capacity, and faced a declining market and declining prices for their ammunition products. As a result, in 2017, the Related Debtors were unprofitable and experienced significant cash flow difficulties.

7. Zions First National Bank ("Bank") is the primary pre-petition secured lender for all Related Debtors except Components Exchange. On or about November 19, 2014, the Bank advanced a revolving loan and four term loans to all Related Debtors (except Components Exchange), to two-non debtor entities, Twin River Contract Loading, Inc., and Big Canyon Environmental, LLC, and to me (collectively, "Borrowers"). On or about July 27, 2015, the Bank advanced a fifth term loan to the Borrowers. Components Exchange was <u>not</u> a borrower under

any of such loans, but, on or about August 31, 2016, Components Exchange granted to the Bank a security interest encumbering its assets in order to provide additional collateral to the Bank.

8. In 2016, the Borrowers failed to comply with certain financial covenants contained in the Bank loan agreements. Moreover, the revolving loan became due on July 27, 2016, and the Bank declined to extend the revolving loan. The Bank alleges an outstanding balance owed by the Borrowers in the approximate amount of $16.7 million.

9. The Borrowers acted diligently to address their financial difficulties. In 2017, the Borrowers downsized their businesses. The Borrowers liquidated a significant amount of their inventory in order to generate cash. The Borrowers also undertook two significant reductions in their workforces, and reduced other operating expenses, in order to attempt to return to profitability.

10. In addition, in 2017, the Borrowers worked with Cascadia Capital to raise debt or equity funding. However, since the ammunition market was oversaturated with supply and prices in the ammunition market were depressed, the only proposals that were obtained from potential funding sources were deemed to be unsatisfactory.

11. In or about April 2018, the relationship between the Borrowers and the Bank deteriorated. In or about April 2018, the Bank demanded that I step aside as president or managing member of the Borrowers, and that a chief restructuring officer be appointed to manage the business of the Borrowers. The Bank rejected a proposed chief restructuring officer proposed by the Borrowers, and required that the Borrowers consent to the appointment of the chief restructuring officer dictated by the Bank, or the Bank would pursue its legal remedies against the Borrowers. Based upon the Bank's threats, the Borrowers believed that they had no choice but to employ the chief restructuring officer demanded by the Bank, and so, on or about April 20, 2018, the Borrowers executed that Chief Restructuring Officer Agreement ("CRO Agreement") required by the Bank. In accordance with the provisions of the CRO Agreement, I agreed to step aside as president or managing member of the Borrowers, and CFO Solutions LLC was appointed to act as chief restructuring officer of the Borrowers ("Bank-Appointed CRO").

12. I on behalf of the Related Debtors believe that the CRO Agreement is extraordinarily overreaching and reflects a wrongful attempt by the Bank to exercise control over the Borrowers. I on behalf of the Related Debtors believe that the Bank-Appointed CRO is a financial consultant, and that, upon the Bank-Appointed CRO's appointment, the Bank-Appointed CRO had no knowledge of the Related Debtors, the Related Debtors' business operations or the Related Debtors' industry. Nevertheless, the Bank-Appointed CRO took also immediately after his appointment acts to change dramatically the Related Debtors' operations, such as by closing business operations, terminating employees and pursuing sales of assets, without evaluating adequately the consequences of such acts on the Related Debtors' enterprise value. Notwithstanding the Bank-Appointed CRO's lack of any meaningful knowledge of the Related Debtors' business or the Related Debtors' industry, the Bank-Appointed CRO has not employed me, nor even consulted in any meaningful manner with me regarding the operations of the Related Debtors despite the fact that I founded the Related Debtors and have a substantial amount of knowledge regarding the financial affairs of the Related Debtors and the Related Debtors' industry.

13. The acts taken by the Bank-Appointed CRO have impaired substantially the operations of the Related Debtors and have devalued the assets of the Related Debtors. The Bank-Appointed CRO has alienated major customers of the Related Debtors and key employees of the Related Debtors. In effect, the Bank-Appointed CRO has acted to liquidate, in a negligent and imprudent manner, the Related Debtors' assets for the benefit of the Bank-Appointed CRO's "benefactor" in this case, the Bank, to the detriment of the Related Debtors and the Related Debtors' other creditors.

14. By reason of the negligent and ill-advised acts taken by the Bank-Appointed CRO, substantial damage has been done to the operations of the Related Debtors. I on behalf of the Related Debtors believe that, if the Bank-Appointed CRO were allowed to continue to manage the Related Debtors' financial affairs, the viability of the Related Debtors would be impaired greatly, if not destroyed, with substantial and irrevocable injury being caused to the Related Debtors and their creditors.

15. I on behalf of the Related Debtors believe that the Bank-Appointed CRO and the Bank, acting in concert, took control of the Related Debtors and were acting to liquidate the Related Debtors' assets for substantially less than the value of the Related Debtors' assets, for the benefit of the Bank, but to the severe detriment of the Related Debtors and the Related Debtors' other creditors. Accordingly, in order to protect and preserve the value of the Related Debtors' assets for the benefit of the Related Debtors' creditors, on June 7, 2018, the Related Debtors terminated the employment of the Bank-Appointed CRO and reappointed former senior management, led by me as president of the corporate Related Debtors and me as managing member of the limited liability company Related Debtors.

16. In addition, the Related Debtors have engaged J. Michael Issa of GlassRatner Advisory & Capital Group, LLC, a very experienced financial turnaround expert with knowledge of the Related Debtors' industry, as Chief Restructuring Officer to manage the Related Debtors' reorganizations and to administer the Related Debtors' Chapter 11 cases. I understand and believe that Mr. Issa has served as a financial consultant or advisor or in other capacities in more than 100 Chapter 11 cases, has acted as a chief restructuring officer or as a trustee in a number of Chapter 11 cases, and that he is very capable of leading the Related Debtors' efforts to reorganize their financial affairs for the benefit of all of the Related Debtors' creditors.

17. I understand that numerous similar, if not identical, applications, hearings and orders will be involved in these cases. Joint administration will avoid wasting resources, which would result though duplication of effort if the cases involving the Related Debtors were to proceed separately.

18. I understand and believe the Related Debtors' creditors stand to benefit from the increased efficiency of administration anticipated through joint administration because they will not be forced to review and separately respond to substantially similar applications, motions, complaints, and other pleadings that would otherwise be filed in separate cases. Moreover, joint administration will permit each of the Related Debtors to respond more efficiently to the demands of their creditors, and will reduce attorneys' fees, copying costs, mailing costs and other costs of administering the cases.

19. Attached hereto as Exhibit "1" and incorporated herein by this reference is the form of case caption to be used in the jointly administered cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 8th day of June 2018.

/s/ David C. Howell
———————————————
David C. Howell

-8-

# EXHIBIT 1

ROBERT E. OPERA – California State Bar No. 101182
ropera@wcghlaw.com
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100/Facsimile: (949) 720-4111

STEPHEN R. HARRIS – Nevada State Bar No. 001463
steve@harrislawreno.com
**HARRIS LAW PRACTICE LLC**
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600

[Proposed] General Insolvency Counsel
for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| In re: | |
|---|---|
| ☐ X-TREME BULLETS, INC., a Nevada corporation, ☐ AMMO LOAD WORLDWIDE, INC., an Idaho corporation, ☐ CLEARWATER BULLET, INC., an Idaho corporation, ☐ FREEDOM MUNITIONS, LLC, an Idaho limited liability company, ☐ HOWELL MACHINE, INC., an Idaho corporation, ☐ HOWELL MUNITIONS & TECHNOLOGY, INC., an Idaho corporation, ☐ LEWIS-CLARK AMMUNITION AND COMPONENTS, LLC, an Idaho limited liability company, ☐ COMPONENTS EXCHANGE, LLC, an Idaho limited liability company, ☐ All Debtors. Debtors and Debtors-in-Possession. | Jointly Administered under Case No. 18-50609-btb with Case Nos. 18-50610-btb; 18-50611-btb; 18-50613-btb; 18-50614-btb; 18-50615-btb; 18-50616-btb; and 18-50617-btb<br><br>Chapter 11 Proceedings<br><br>[_____]<br><br>DATE:<br>TIME:<br>EST. TIME FOR HEARING: |

234124