Timothy A. Lukas, Esq. (NV Bar No. 4678)
**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Tel: (775) 327-3000
Fax: (775) 786-6179
Email: ECFlukast@hollandhart.com

*Attorneys for Z.B., N.A.*
*dba Zions First National Bank*

**HOLLAND & HART LLP**
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

In re:

X-TREME BULLETS, INC.,
   a Nevada corporation,

             Debtor.

Case No.: 18-50609-BTB

Chapter 11

**DECLARATION OF MATTHEW R. McKINLAY IN SUPPORT OF OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES**

Hearing Date:   June 12, 2018
Hearing Time:   2:00 PM

I, MATTHEW R. McKINLAY, declare under penalty of perjury as follows:

1.     I am a managing member of Guidepoint Management, LLC and a member of the Advanced CFO dba CFO Solutions.

2.     I have personal knowledge of the transactions and circumstances described herein unless stated and would testify about the same before this Court.

3.     Attached hereto as **Exhibit 1** is a copy of my CV in business and reorganizations.

4.     I am the Chief Restructuring Office ("CRO") of Howell Munitions & Technology, Inc. ("HMT") as well as nine other entities controlled directly or indirectly by David Howell pursuant to the CRO Agreement executed by the Parties on April 23, 2018.

5.     Starting in early April, Zions First National Bank and Mr. Howell contacted me requesting my services and those of CFO Solutions to act as the Chief Restructuring Officer for a

set of companies operating primarily Lewiston, Idaho.  To my knowledge, Mr. Howell and Zions First National Bank also considered at least one other prospective CRO candidate. Both Ms. Grindle and I sat through several interviews and conference calls with Mr. Howell and his counsel, Samuel T. Creason, Esq. of the law of firm of Creason, Moore, Dokken & Geidl, PLLC located in Lewiston, Idaho.  After completing the highly negotiated process with counsel, Mr. Howell and a set of companies entered into a Chief Restructuring Officer Agreement which I also executed.  A true and complete copy is attached hereto as **Exhibit 2**.

6.      I have reviewed the Declaration of David C. Howell in Support of Debtor's Motion for Joint Administration and Related Chapter 11 Cases and it contains numerous inaccuracies and misstatements of fact.  We do not work for Zions First National Bank and are not the "Bank Appointed CRO".  We were appointed the CRO of HMT and its related affiliates pursuant to the CRO Agreement with the full knowledge, consent and approval of Mr. Howell.

7.      I have never received any requests to modify, amend or remove myself or CFO Solutions as the CRO.  Nor, have I agreed to any amendments to the CRO Agreement.  Except for the *Statement Regarding Authority To Sign and File Petition* executed by Mr. Howell, I have no other information indicating under what authority HMT placed itself in bankruptcy.

8.      I have learned that Mr. Howell's mis-management of the Lewiston based Howell companies resulted in multi-million assessments against the HMT wholly owned subsidiary, Twin River Contract Loading, Inc., an Idaho corporation, and an assertion of corporate parent liability against HMT.  *See* **Exhibits 3** and **4**.  This liability and many others arose many months or years before I was hired as CRO.

9.      I am aware that Mr. Howell had marketed and retained outside financial consultants, Cascadia Capital, in 2017, but he did receive any offers acceptable to him.  It is my understanding based on my observations and review of materials since becoming CRO that Mr. Howell has consistently had management difficulties with his companies, employees and has an over inflated opinion of the companies' value.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ◆ Fax: (775) 786-6179

10.     Contrary to Mr. Howell's assertion of not having any involvement with the companies after April 24th, Ms Grindle and I had frequent contact with Mr. Howell to discuss HMT-related matters.  We kept him on the HMT payroll through the end of May, and he remains the primary landlord of the companies, directly or through other entities he controls.

11.     Mr. Howell and I had disagreements about the process I followed to try to maximize the value of the companies.  However, he never made any written request for amendment of the CRO Agreement nor sought any relief to modify or remove me as CRO until his actions on June 7th.

12.     I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 12, 2018.

_____
MATTHEW R. McKINLAY

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ◆ Fax: (775) 786-6179

**<u>CERTIFICATE OF SERVICE</u>**

I am, and was when the herein described mailing took place, a citizen of the United States, over 18 years of age, and not a party to, nor interested in, the within action; that on June 12, 2018, I served a true and correct copy of the foregoing **DECLARATION** as follows:

**Electronic Mail Notice List:**

- STEPHEN R HARRIS    steve@harrislawreno.com, hannah@harrislawreno.com, norma@harrislawreno.com
- ROBERT E. OPERA    ropera@wcghlaw.com, pj@wcghlaw.com, stacyly@wcghlaw.com
- U.S. TRUSTEE - RN - 11    USTPRegion17.RE.ECF@usdoj.gov


DATED: June 12, 2018.

_____
/s/ Jeanette Sparks

11060568_2

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

# EXHIBIT 1

## McKinlay CV

# EXHIBIT 1

## McKinlay CV



## About Guidepoint Management LLC and Advanced CFO

Guidepoint Management, LLC is the turnaround division of and a wholly owned subsidiary of CFO Solutions LLC, d/b/a Advanced CFO.  Guidepoint / Advanced CFO administers distressed businesses on behalf of owners, or on the advice of secured lenders and other stakeholders.  Guidepoint / Advanced CFO, its members and consultants have has acted as Receiver, Chief Restructuring Officer, Interim CFO, Trustee, turnaround advisor, and financial advisor on a number of projects throughout the United States, and have successfully recovered millions of dollars for the benefit of secured lenders, creditors and owners.

## Principal Summaries

**Matthew R. McKinlay** is Managing Member of Guidepoint Management, LLC and member of Advanced CFO.  Matt has 19 years of experience solving complex financial and operational matters in roles such as Receiver, CRO / CFO, Turnaround Advisor and so forth.  Matt is exceptionally good at helping calm nerves during high-impact situations and is a stabilizing influence for creditors, employees and other stakeholders.  Matt is fully credentialed as a Certified Turnaround Professional (CTP) by the Turnaround Management Association.  He is also a Certified Management Accountant (CMA).  He earned an MBA in Finance from the Marriott School of Management at Brigham Young University.

**Timothy L. Donovan** is a consultant with Guidepoint Management, LLC and Advanced CFO.  He brings 40 years of knowledge and experience working with a wide array of businesses and industries, particularly in dealing with distressed businesses.  Tim has consulted as Trustee, Receiver, CFO, Controller and Turnaround Advisor with dozens of businesses.  Tim is fully credentialed as a Certified Insolvency and Restructuring Advisor (CIRA), and is a Certified Public Accountant (CPA).  Tim earned his MBA in Finance from the University of Phoenix.



# <u>Summary of Significant and Relevant Cases</u>

**Confidential Calf Ranch and Dairy Operation**

Advanced CFO was hired by a calf ranch / dairy operation in Kuna, ID at the request of its primary secured lenders as Chief Restructuring Officer to assist in a financial restructuring of the company's debt.  At the time Advanced CFO was hired, the operation had $55M outstanding in a working capital line of credit and $12.5M outstanding in term debt.  Advanced CFO prepared a restructuring plan that called for a liquidation of its fat cattle business and redirecting its resources to become a custom feed operation – significantly reducing market risk.  Advanced CFO led the negotiations in a successful forbearance agreement, which the operation is performing against.  Currently, the line of credit has been paid down to $11.5M, and is expected to be paid down to $6M, with remaining inventory / AR securing the loan totaling $9M.  Advanced CFO also helped ensure reporting requirements were prepared timely and accurately, and helped manage the relationship between lender and borrower.

**Confidential Trucking Company in Eastern Idaho**

Guidepoint Management / Advanced CFO was hired by a mid-sized trucking company on the advice of the secured lender as Chief Restructuring Officer to create and administer a loan recovery plan.  The company hauls oil and water to the Bakken Fields in North Dakota, and had seen revenues decline from $90M in 2011 to $30M in 2014.  Working with management, a recovery plan was created, reviewed with stakeholders including the secured lenders, trade vendors, employees and other stakeholders. Guidepoint Management / Advanced CFO oversaw the implementation of the recovery plan, which resulted in a full repayment of its debt.

**Jantz Family Farms, LLC / Jantz Land Company, LLC**

Advanced CFO is the duly appointed receiver by Oregon State Court to manage and oversee a farm and cattle operation in Vale Oregon.  The owner abandoned the property, and the receiver was recommended by the senior lender and appointed by the Court to facilitate an orderly liquidation of all land and farm equipment.  The receiver is working alongside several competing stakeholders including a conservator representing the owner, purchase money lienholders, and a secured lender with blanket liens on all assets.



**Lalani Steel USA**

Guidepoint Management / Advanced CFO was hired by Lalani Steel on the advice of the secured lender as Chief Restructuring Officer to create and administer a loan recovery plan.  Lalani Steel is a steel wholesale distributor located in Fontana, CA.  Working with management, a recovery plan was created and reviewed with stakeholders including the secured lenders, trade vendors, employees and other stakeholders.  The recommended plan called for the liquidation of non-performing inventory and fixed assets.  Mr. McKinlay and Mr. Donovan oversaw the implementation of the recovery plan.  The secured lenders were repaid in full, and the recovery plan was accomplished out-of-court, with the company continuing as a going concern.

**Champion Orthodontics PL, Orlando Friendly Dentistry, City Hall Dental and Orange Dental PA**

Guidepoint Management / Advanced CFO was the duly appointed Receiver by Florida State Court to manage and oversee four medical offices in Orlando, FL.  The receiver's duties include operating the practices through a sale of the assets, and distributing net proceeds to creditors.  Also included was a review of the companies' books and records to establish whether fraudulent activities occurred, and to determine what recoveries of fraudulent transfers might be available for distribution to creditors.

**RA Rasmussen & Sons, Inc.**

A Washington State Court Receiver was appointed to take over management and oversee the liquidation of an insolvent vegetable grower and distributor near Yakima, WA.  Guidepoint Management was hired by the Receiver to lead the administration of the receivership estate, including liquidating all farming equipment and real property, rejecting and assigning lease agreements, administering claims, reporting cash sources and uses to the Court, and so forth.  We negotiated with a nearby farmer to operate the farm as tenant for one growing season while the property was appraised and marketed for sale, so as to preserve the value of the crops that had been planted prior to the Receiver's appointment. The farm controlled dozens of leased land owned by the Yakima Indian Nation, and, working with the Bureau of Indian Affairs these leases were assigned to the buyer of the real property.  The secured lender received a much better recovery than would have occurred under a foreclosure.

**United Pipe & Supply, Co., Inc.**

A Federal Receiver was appointed to administer and liquidate the assets of a multi-unit pipe and irrigation supply company operating in five states and headquartered in Clackamas, Oregon.  Mr.'s McKinlay and Donovan were hired to help liquidate seventeen branches, consolidate and sell physical inventory, administer claims, collect open accounts receivable, communicate with the secured creditor on cash needs, report sources and uses of cash to the court and other stakeholders, and administer a



liquidating plan.  A strategic buyer was found for a number of the assets and product lines, which resulted in much better-than-expected sale proceeds Ultimately, the secured lender was repaid in full (including fees), and unsecured creditors received a 50% recovery.

**Carleton Farms, LLC**

Advanced CFO is the duly appointed receiver by Oregon State Court to manage and oversee a farm and cattle operation in Merrill, Oregon (see case #17CV56444 in the Circuit Court of the State of Oregon, Klamath County).

**Great Western Chemical Company, Inc.**  Mr. Donovan was engaged to develop sophisticated operating models to determine which of the 29 existing branches should be kept open, sold, closed, etc.  The company was in default on its $20 million credit line.  Mr. Donovan was part of a three man team that, using the models he constructed, performed pre-bankruptcy planning to determine if a reorganization was possible, if it should be done in or out of bankruptcy, and if the bankruptcy should (or could) be consolidated with the various subsidiary corporations in the group.  Significant pre-bankruptcy planning was done.

After much planning, it was determined that the company could not be saved and the best alternative was to liquidate under Chapter 11.  Mr. Donovan was intimately involved in the preparation of the all of the bankruptcy filing schedules (including the preparation of the Statement of Financial Affairs and support for the Disclosure Statements), monthly operating statements to US Trustee (Rule 2015 reports), and cash collateral budgets (including the cash monitoring and management function.).

He directly supervised the reconciliation of claims filed by vendors and, filing of objections to those claims, and participated in the objection hearings.  He also managed the preference avoidance and recovery actions.  (The estate made over 400 preference demands totaling over $8 million.)  He participated in several settlement conferences, mediation, and authorized the settlement of several claim and preference actions.

Seven distributions were made to creditors through the closure of the case in 2005. At that time, the distribution to creditors exceeded 39 cents on the dollar.  After the case had been closed for 5 years, the Estate received an unexpected class action settlement. Mr. Donovan managed distribution of those funds to the allowed claimants that could still be located.



**DBSI, Inc.**

DBSI, Inc. is the lead case in 172 jointly administered bankruptcy cases that were filed in November 2008. The company was the originator of thousands of TIC (tenant in common) limited liability companies and limited partnerships.  DBSI, Inc. through its many related companies offered investments, development and management services to thousands of investors before its November 2008 filing. At the time of filing, approximately 25,000 claims were filed.  Early in the case an examiner was appointed who found significant comingling of funds had occurred and recommended the appointment of a chapter 11 trustee.  A trustee (James Zazzali, former New Jersey Supreme Court Chief Justice) was appointed. He retained Myers & Co., Consultants, LLC as financial manager for this complex case, who in turn retained Mr. Donovan and Mr. McKinlay as on-site managers.  At the confirmation hearing in October 2010, Judge Walsh remarked that the DBSI case was the second most complicated case he had experienced in all his time on the bench.

Mr. Donovan's and Mr. McKinlay's duties in this case included the development of sophisticated financial models to assist with the substantive consolidation of the many entities, a forensic accounting of the Debtor's books and records to establish grounds for substantive consolidation, the liquidation of assets including dozens of real property assets, the supervision of claims review and objection process including focus on Secured, Administrative, and Priority tax claims resulting in reduction of millions of dollars in tax claims and the abatement of related penalties.  They also provided significant litigation support and forensic accounting to prosecute claims on behalf of the Trustee and trust beneficiaries. They are also preparing and filing the quarterly UST 2015 reports with the Court.

Mr. Donovan and Mr. McKinlay are administering a liquidating plan across 22,000 creditors, with damages asserted totaling over $100 billion.


**Loren Sites DDS PLLC**

Guidepoint Management / Advanced CFO was appointed Receiver by Colorado State Court to manage and oversee a dental clinic in Pueblo, CO.  The owning dentist threatened to abandon the practice, which led to the appointment of a receiver ex parte.  Guidepoint Management worked with the owner on an alternate course of action that led to the refinance and merger with another practice.


**Trump Entertainment Resorts Distributing Trust**

Guidepoint Management / Advanced CFO was hired by the distribution trustee to administer the TER Distribution Trust.  Responsibilities include administering all general unsecured claims of the Trump Entertainment Resort Ch 11 plan; evaluating avoidance actions that might be brought by the Trustee and supporting the litigation of such, and providing accounting and financial services and oversight for the Trust.



**IHB Liquidating Business Trust**

Guidepoint Management / Advanced CFO was retained to administer the IHB Liquidating Business Trust. Responsibilities included administering the assets of a defunct telecommunications and satellite provider.  Assets administered included satellite gateways located in The Netherlands, Brazil, Curacoa and the United States.  The assets were placed into a liquidating trust voluntarily by a parent corporation that wished to cease these business operations.

**CML Metals Inc.**

Guidepoint Management was the Assignee in an Assignment for the Benefit of Creditors case administered in St. George, UT.  The subject company, a defunct mining operation sold most of its assets and retained certain claims against vendors.  The Assignee's duties include pursuing claims against those vendors and distributing assets to approximately 30 creditors.

**Hartz Mountain Industries**

Guidepoint Management / Advanced CFO was retained by Hartz Mountain on the advice of counsel, a creditor of JET Distribution, a Chapter 11 Debtor to conduct a forensic accounting of the debtor's books and records, and evaluate intercompany claims, and particularly whether an alter-ego existed between affiliated entities, customers and suppliers.  Findings resulted in a confirmed plan that was very favorable to Hartz Mountain, which is currently being administered.

**Howard Johnson Hotels**

A Washington State court receiver was appointed to take over management of the five hotel properties. Mr. Donovan assisted the Receiver in the management of the properties.  Duties included:  preparation and monitoring of detailed operating budgets for the properties, monitoring of cash needs for the properties, review of financial statements prepared by frontline hotel management company, comparison of actual results to budget and recommended actions, preparation of various court required receiver reports, interface with creditors, preparation of reports to assist with sale of properties, review and filing of necessary property (sales, local, and occupancy) taxes.



**Jared A. Franson, DMD PS, dba Apple Dental and Franson Family Dentistry**

Guidepoint Management / Advanced CFO was appointed Receiver by Washington State Court to manage and oversee three medical clinics near Vancouver and Longview, WA.  Having become disabled, the owning dentist abandoned the practice, which led to the appointment of the receiver.  Guidepoint Management hired interim doctors to treat patients, implemented a pay-for-performance plan among staff, sold non-productive assets and restored the practice's profitability.  Guidepoint Management worked closely with the secured lender and unsecured trade vendors on the recovery to keep the practices functioning, and the clinics were ultimately sold within seven months for greater than appraised value.  Judge Hernandez congratulated the Receiver on a very efficient and pleasing outcome on its discharge.



| **Summary of Insolvency Cases (as of February 2018)** |
| --- |

| |
| --- |
| 85 Fifth Associates, LLC |
| Bayview Hotel Associates, LLC |
| Big Feet Pajamas |
| Colorado Railcar Project Monitoring |
| Carleton Farms, LLC |
| CML Metals Inc. |
| Champion Orthodontics, et al |
| Columbia Aviation |
| DBSI Liquidating Trust |
| DBSI Private Action Trust |
| DBSI Real Estate Trust |
| DBSI, Inc. |
| Deer Valley Trucking |
| DeCal Development |
| East West Tea Company |
| eMarket Group, Ltd. |
| Enzyme Technology |
| Eva Family Dental / Ieva Dabeka DDS, PLLC |
| Franson Family Dentistry (Apple Dental) |
| Goodrich Trading Company |
| Graphic Arts Design, Inc. |
| The Great Atlantic & Pacific Tea Company |
| Great Western Chemical CO. |
| Hartz Mountain Industries |
| Harder Mechanical |
| Interstate Rock Products |
| Jantz Family Farms LLC / Jantz Land Company LLC (Receiver) |
| Jared Franson DDS |
| Lalani Steel, Inc. |
| Loren Sites DDS PLLS |
| Nationsbest Trucking |



| |
|---|
| Olympic Coast Investment, Inc. |
| Oregon Nurses Association |
| Pacific Retirement Services |
| RA Rasmussen & Sons, Inc. |
| Research Data Design |
| ScanWare, Inc. |
| Schooner Creek |
| Signs Now of Oregon |
| Silver Plume |
| Sun Corp |
| Taylor Lumber & Treating, Inc. |
| The Marshall Group, LLC |
| Trump Entertainment Resorts Distribution Trust |
| TriMet |
| Trinity Carpet Brokers, Inc. |
| United Pipe & Supply |
| Western Communications |
| Willamette Valley Distributing |



## **Fee Schedule**

Matt McKinlay:  $295 per hour

Timothy L. Donovan:  $275 per hour

On-Site Project Manager:  $150 per hour

Other associates at prevailing rates between $80 - $275 per hour

Expenses are billed at cost, and travel time, if any, is billed at ½ rate.

# EXHIBIT 2

## Chief Restructuring Officer Agreement

# EXHIBIT 2

## Chief Restructuring Officer Agreement

## Chief Restructuring Officer Agreement

This Chief Restructuring Officer Agreement (the "Agreement") is made effective this 20th day of April, 2018, by and between the following: David Howell ("Owner"), Matthew McKinlay ("CRO"), Valerie Grindle ("Assistant CRO"), Z.B., N.A. dba Zions First National Bank ("Zions"), and the following entities (collectively the "Company"): Ammo Load Worldwide, Inc.; Big Canyon Environmental, LLC; Clearwater Bullet, Inc.; Freedom Munitions, LLC; Howell Machine, Inc.; Lewis-Clark Ammunition Components, LLC; Twin River Contract Loading, Inc.; X-Treme Bullets, Inc.; Howell Munitions & Technology, Inc.; and Components Exchange, LLC. Owner, CRO, Assistant CRO, Zions, and the Company shall be collectively referred to herein as Parties.

1.      Company agrees to employ Matthew McKinlay of CFO Solutions, LLC dba Advanced CFO as Chief Restructuring Officer ("CRO") for the Company with the authority to employ and direct certain additional consultants to assist him, collectively the "CRO Team". Valerie Grindle as Assistant CRO will serve as the on-site lead of the CRO Team.

2.      CRO is authorized to perform the duties of the CRO of the Company to manage the business and operational affairs of the Company consistent with the role of the President and Treasurer or Manager, as appropriate, of the Company, subject to oversight of Zions and with the advice of an advisory board (the "Advisory Board"). The members of the Advisory Board shall include a representative of Zions, Angela Smith ("Smith") and such other members who are willing to serve and who are acceptable to Zions and Smith. The CRO Team shall consult with the Advisory Board as the CRO deems appropriate in the execution of his duties. The Advisory Board will not, however, have authority to approve or disapprove decisions made or actions taken by the CRO, it being the agreement of the Parties that the Advisory Board to provide advice to the CRO as appropriate under this Agreement. Except as otherwise provided, the CRO Team shall have authority over the operational, employment, accounting, and record keeping needs of the Company, and shall specifically endeavor to improve accounting and financial controls at the Company, as well as record keeping. The CRO Team shall have authority to sell Company assets with the consent of Zions. The CRO Team shall be responsible for filing monthly reports with the Company and Zions. CRO has the authority to provide periodic reports to Zions as it deems appropriate. Neither the CRO nor the CRO Team has any responsibility to file any federal, state or local tax returns, but will provide oversight as needed for the reporting and filing of the returns by the appropriate employees of the Company. The CRO shall have authority on behalf of the Company to consent to the appointment of a receiver, or to file a petition or consent to an order for relief under Title 11 of the United States Code.

3.      In addition, the CRO Team will assist the Company in its restructuring efforts that the Company and Zions request from time to time. The services are subject to change as mutually agreed among CRO, the Company and Zions.

4.      As part of its services, the CRO Team may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that the CRO Team participates in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not the CRO Team.

5.      Should the Company become a debtor under Chapter 11 of the Bankruptcy Code, CRO will provide services to the Company until its retention is approved or disapproved by the court or until our Services have been transitioned to another firm.

6.      Owner shall resign as President, Treasurer (if applicable) and Manager of each entity comprising the Company and during the term of this Agreement shall hold no office in the Company. Owner shall at all times fully cooperate with the CRO Team and shall take no action which interferes with the duties of CRO as outlined in this Agreement. During the term of this Agreement, CRO shall have all of the powers and authority granted to the President, Treasurer and/or Manager of each entity comprising the Company and no other officer or Manager of any such entity may exercise such power or authority without the consent of CRO. Assistant CRO will have such powers and authority as CRO may grant to Assistant CRO. No officer or manager of the Company shall take any action contrary to the actions of the CRO, Assistant CRO or the provisions of this Agreement during the term of this Agreement.

7.      Owner and Company shall at all times act in good faith to support the CRO Team in performing its duties, and shall provide the CRO Team with access to all books and records related to the Company, including but not limited to, all accounting records, contracts for services to be provided by Company, union contracts, licenses, permits, applications, purchase and sale agreements, and insurance policies. The Company's owners, agents, and employees shall fully and timely cooperate with the CRO in connection with the performance of its duties, and are enjoined from interfering with the CRO's performance of such duties. In the event a dispute arises between the CRO and Owner, or any existing owner, officer, agent, or employee of the Company regarding their compliance with this paragraph, the CRO shall have the right to seek a Court order, on five (5) business days' notice, enforcing the terms of this Agreement.

8.      At their sole discretion, upon fifteen (15) days' notice, the CRO and Assistant CRO may resign their employment by the Company and terminate their roles as CRO and Assistant CRO.

9.      The Company shall indemnify the CRO Team on the same terms as provided to its other officers and directors under the corporate/limited liability company articles, bylaws, operating agreements, limited liability company agreements or other corporate/limited liability company governing documents (e.g., board, manager, member or shareholder resolutions) (collectively, the "Governing Documents") and applicable state law and can and will provide insurance coverage for the CRO and Assistant CRO under its D&O policy. In the event Company does not currently have a D&O policy, Company shall acquire a D&O policy which provides insurance coverage for the CRO and Assistant CRO on terms typical in the industry in which Company operates. To the extent CRO's authority under this Agreement conflicts with the authority of any other officer, manager or member of the Company pursuant to the Governing Documents, this Agreement shall control and Owner hereby represents and warrants that it has taken, caused to be taken, will take or will cause to be taken all actions necessary to authorize the foregoing.

10.      The CRO Team shall have no liability to the Company or Owner for loss or diminution in value of or damage to the Company or its assets unless the loss, diminution in value, or damage is caused by an act or omission for which members of a board of directors of a private corporation organized and existing under the laws of Idaho, who vote to approve the act or omission, are liable to the corporation in cases in which the liability of directors is limited to the maximum extent permitted by Idaho statute or law.

11.      The CRO Team shall have no personal liability to the Company or Owner except for loss or damage occasioned by fraud on the part of the CRO or Assistant CRO, by acts

Page 2 – CHIEF RESTRUCTURING OFFICE AGREEMENT

intended by the CRO or Assistant CRO to cause loss or damage to the Company or Owner, or by acts or omissions for which an officer of a business corporation organized and existing under the laws of the State of Idaho are liable to the claimant under the same circumstances in cases in which the liability of directors is limited to the maximum extent permitted by Idaho statute or law.

12.     The CRO Team shall be paid for its services at the rate of $295.00/hour for work performed by Matthew McKinlay, $250.00/hour for work performed by Valerie Grindle, and between $150.00 and $250.00/hour for work performed by the CRO's other consultants, at their current prevailing rates.  In addition, the CRO Team shall be entitled to reimbursement for its reasonable expenses incurred in the performance of its duties on a monthly basis.

13.     Zions may, but shall have no obligation to, advance to the Company funds necessary to pay all amounts payable to the CRO pursuant to this Agreement. All such advances shall be considered advances made pursuant to the terms of Loan No. 1 between Company and Zions and shall be secured by the Security Agreement executed by Company and the Trust Deed, Assignment of Rents, Security Agreement and Fixture Filing executed by Owner.

14.     Work will commence upon the execution of this agreement, and receipt of a $25,000 retainer.  The retainer will be applied toward the final invoice, with any remaining unused balance to be refunded to the Company.

15.     The CRO Team may be terminated with or without cause upon 30 days written notice from the Company and Zions.  Neither Owner nor Company shall have the right to terminate this Agreement or terminate the CRO's services under this Agreement, absent the prior written consent of Zions, which consent shall not be unreasonably withheld. No interested party, including Owner, shall be precluded, upon motion with a court of competent jurisdiction, from requesting the immediate modification of duties or removal of the CRO for cause shown.

16.     This Agreement shall be interpreted and enforced in accordance with the laws of the State of Idaho. Subject to the provisions above, jurisdiction and venue of any action to enforce or interpret this Agreement shall lie exclusively in the state courts in Lewiston, Idaho or the federal courts in located in Coeur d'Alene, Idaho.

17.     This Agreement and these Terms and Conditions constitutes the sole and entire agreement among the parties with respect to the items contained, and supersede any prior oral or written undertaking or agreement of any nature or description whatsoever. This Agreement may not be modified except by a writing signed by all of Company, CRO, Assistant CRO and Zions.

18.     Neither party may assign any of its rights hereunder without the express written consent of the other party, which shall not be unreasonably withheld or delayed.

IN WITNESS WHEREOF the parties hereunder set their hands the day and year first above written.

**CHIEF RESTRUCTURING OFFICER:**

_____
Matthew McKinlay

**ASSISTANT CRO:**

_____
Valerie L. Grindle


**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation


By: _____
        David C. Howell, President


**BIG CANYON ENVIRONMENTAL, LLC,**
an Idaho limited liability company


By: _____
        David C. Howell, Manager

**CLEARWATER BULLET, INC.,**
an Idaho corporation


By: _____
        David C. Howell, President

**CHIEF RESTRUCTURING OFFICER:**

_____
Matthew McKinlay

**ASSISTANT CRO:**

_____
Valerie L. Grindle

**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation


By: _____
     David C. Howell, President


**BIG CANYON ENVIRONMENTAL, LLC**,
an Idaho limited liability company


By: _____
     David C. Howell, Manager

**CLEARWATER BULLET, INC.,**
an Idaho corporation


By: _____
     David C. Howell, President

**CHIEF RESTRUCTURING OFFICER:**

_____

Matthew McKinlay

**ASSISTANT CRO:**

_____

Valerie L. Grindle

**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation

By: _____
David C. Howell, President

**BIG CANYON ENVIRONMENTAL, LLC,**
an Idaho limited liability company

By: _____
David C. Howell, Manager

**CLEARWATER BULLET, INC.,**
an Idaho corporation

By: _____
David C. Howell, President

**Page 4 – CHIEF RESTRUCTURING OFFICE AGREEMENT**

**FREEDOM MUNITIONS, LLC**
an Idaho limited liability company

By: _____
David C. Howell, Manager


**HOWELL MACHINE, INC.**,
an Idaho corporation

By: _____
David C. Howell, President


**HOWELL MUNITIONS & TECHNOLOGY, INC.**
an Idaho corporation

By: _____
David C. Howell, President


**LEWIS-CLARK AMMUNITION COMPONENTS, LLC**,
an Idaho limited liability company

By: _____
David D. Howell, Manager


**TWIN RIVER CONTRACT LOADING, INC.**,
an Idaho corporation

By: _____
David C. Howell, President

**X-TREME BULLETS, INC.,**
an Idaho corporation

By: _____
David C. Howell, **president**


**COMPONENTS EXCHANGE, LLC,**
an Idaho limited liability company

By: _____
David C. Howell, Manager


**OWNER:**

_____
David C. Howell, individually

**ZIONS:**

Z.B., N.A. dba Zions First National Bank


By: _____

Its: _____


10901788_1

**Page 6 – CHIEF RESTRUCTURING OFFICE AGREEMENT**

**X-TREME BULLETS, INC.,**
an Idaho corporation


By: _____
     David C. Howell, president


**COMPONENTS EXCHANGE, LLC,**
an Idaho limited liability company


By: _____
     David C. Howell, Manager


**OWNER:**


_____
     David C. Howell, individually

**ZIONS:**

Z.B., N.A. dba Zions First National Bank

By: _____
Its: _Senior Vice President_


10901209_1

# EXHIBIT 3

## ATB Letter dated 12/21/2017

# EXHIBIT 3

## ATB Letter dated 12/21/2017



**DEPARTMENT OF THE TREASURY**
ALCOHOL AND TOBACCO TAX AND TRADE BUREAU
8002 FEDERAL OFFICE BUILDING
550 MAIN STREET
CINCINNATI, OHIO 45202
December 21, 2017

701030100: RLK
5633
ASMT-NRC-2016-0172(A-M)
ASMT-NRC-2018-0044(A-B)
EIN:████████
FAM: F-ID-15021
TracDoc #645107

### FINAL NOTICE & DEMAND OF TAXES DUE
### NOTICE OF INTENT TO LEVY AND
### APPLICATION FOR PAYMENT AGREEMENT

CERTIFIED MAIL

Twin River Contract Loading Inc.
815 D Street
Lewiston, ID 83501

Re:    153 S Port Avenue
       Lewiston, ID 83501

Dear Taxpayer:

We sent Twin River Contract Loading Inc. a notice on July 15, 2016 requesting payment of your Federal tax liability and have no record of receiving the amount due.

This letter is being sent to you as official notice that we intend to place a levy upon your property or rights to property in accordance with 26 U.S.C. 6331(d) for the amount shown below. This is your final notice.

| Assessment Number: | ASMT-NRC-2016-0172(A-M) ASMT-NRC-2018-0044(A-B) |
|---|---|
| Tax Period: | October 1, 2012 - September 30, 2017 |
| Principal (Tax) | $8,646,177.21 |
| Failure To Deposit Penalty under 26 U.S.C. § 6656 (a)] | $0.00 |
| Failure to Timely File Penalty under 26 U.S.C. § 6651(a)(1): | $975,178.98 |
| Failure to Timely Pay Penalty under 26 U.S.C. § 6651(a)(2): | $511,274.81 |
| Interest under 26 U.S.C. § 6601: | $449,437.77 |
| Total: | $10,582,068.77 |
| Amount Paid | $4,311,827.25 |
| Unpaid Balance of Assessment: | **$6,270,241.52** |

-2-

Twin River Contract Loading Inc.

To prevent such levy action, submit a cashier's check or money order in the total amount of **$6,270,241.52** payable to the **Alcohol and Tobacco Tax and Trade Bureau**, within **10** days from the date of your receipt of this notice, along with a copy of this notice in the enclosed envelope.   Please include your **Employer Identification Number and the Assessment Control Number ASMT-NRC-2016-0172(A-M) and ASMT-NRC-2018-0044(A-B)** with your payment.

The amount due includes additional penalties and interest for failure to pay the amount shown in our prior notice.  Additional penalties and interest will continue to accrue until the tax liability is satisfied in full.

If you do not pay the full amount due promptly, your liability may be reported to the Internal Revenue Service (IRS).  IRS may then direct that any refund owed to you be used to satisfy this outstanding liability.  Section 6402(a) of the Internal Revenue Code authorizes the credit of an overpayment of a taxpayer against any outstanding taxpayer liability.

If you have previously paid the amount due or are unable to pay in full, please contact us within **10** days from the date of your receipt of this notice.

If you do not comply with this notice, we may take enforcement action without any further notice to you.  A notice of Federal tax lien may be filed which constitutes public notice to your creditors that a tax lien exists against your property.  Salary or wages may be levied upon as provided by 26 U.S.C. 6331 by serving notice on your employer.  Bank accounts, receivables, commissions, or other kinds of income you have are also subject to levy.  Property or rights to property such as automobiles, real estate, and equipment may also be seized and sold to satisfy your tax liability.

We are enclosing TTB Publication 5610.1, Notice to Delinquent Taxpayers, which outlines steps we may take should you fail to satisfy your financial obligations to the Alcohol and Tobacco Tax and Trade Bureau.  It also explains your rights as a taxpayer and outlines alternatives available to you which could prevent enforced collections activity from taking place.

If you have any questions concerning this assessment or to be considered for a payment agreement, primary means of contacting me are at my email address Ronnie.King@ttb.gov.  You may also try and call me at (513) 684-2701 or 1-877-882-3277 and use option number 1 to enter extension 42701.  Or you may also write to the above address.  You will need to send the details of your proposed payment agreement to me by email or by regular mail.

Sincerely,

Thuria F. Skora

Digitally signed by Thuria F. Skora
DN: c=US, o=U.S. Government,
ou=Department of the Treasury,
ou=Alcohol and Tobacco Tax and
Trade Bureau, ou=People,
serialNumber=101275, cn=Thuria
F. Skora
Date: 2017.12.21 12:18:44 -05'00'

Enclosures:
  Envelope
  TTB P 5610.1
  TTB F 5600.18

Twin River Contract Loading Inc.
TD # 846107

FAM. F-ID-15021
EIN

Final Notice and Demand
With Intent to Levy

| ASSESSMENT_NUMBER | TAX PERIOD BEGIN DATE | TAX PERIOD END DATE | PRINCIPAL TAX | FAILURE TO DEPOSIT PENALTY [26 U.S.C. § 6656 (a)] | FAILURE TO TIMELY PAY PENALTY [26 U.S.C. § 6651 (a)(2)] | FAILURE TO TIMELY FILE PENALTY [26 U.S.C. § 6651 (a)(1)] | INTEREST [26 U.S.C. § 6601] | SUBTOTAL | PAYMENTS | UNPAID BALANCE OF ASSESSMENT |
|---|---|---|---|---|---|---|---|---|---|---|
| ASMT-NRC-2016-0172(A) | 1-Oct-12 | 31-Dec-12 | $133,047.11 | $0.00 | $11,190.50 | $23,948.46 | $12,339.46 | $180,525.53 | $99,739.89 | $80,785.64 |
| ASMT-NRC-2016-0172(B) | 1-Jan-13 | 31-Mar-13 | $659,083.71 | $0.00 | $0.00 | $0.00 | $3,808.99 | $662,892.70 | $636,759.43 | $26,133.27 |
| ASMT-NRC-2016-0172(C) | 1-Jul-13 | 30-Sep-13 | $605,614.19 | $0.00 | $18,238.63 | $54,505.28 | $19,781.64 | $698,139.74 | $605,419.19 | $92,720.55 |
| ASMT-NRC-2016-0172(D) | 1-Oct-13 | 31-Dec-13 | $466,274.93 | $0.00 | $18,650.96 | $41,964.75 | $16,869.58 | $543,760.22 | $466,274.93 | $77,485.29 |
| ASMT-NRC-2016-0172(E) | 1-Jan-14 | 31-Mar-14 | $363,698.28 | $0.00 | $14,547.92 | $81,832.12 | $20,208.60 | $480,286.92 | $363,698.00 | $116,588.92 |
| ASMT-NRC-2016-0172(F) | 1-Apr-14 | 30-Jun-14 | $481,628.07 | $0.00 | $12,040.70 | $108,366.32 | $21,101.93 | $623,137.02 | $481,628.00 | $141,509.02 |
| ASMT-NRC-2016-0172(G) | 1-Jul-14 | 30-Sep-14 | $629,866.27 | $0.00 | $6,298.66 | $56,687.97 | $10,359.38 | $703,212.28 | $629,866.00 | $73,346.28 |
| ASMT-NRC-2016-0172(H) | 1-Oct-14 | 31-Dec-14 | $678,441.83 | $0.00 | $3,392.21 | $30,529.88 | $4,192.10 | $716,556.02 | $678,441.81 | $38,114.21 |
| ASMT-NRC-2016-0172(J) | 1-Apr-15 | 30-Jun-15 | $764,202.42 | $0.00 | $110,809.29 | $171,945.56 | $90,890.61 | $1,137,847.88 | $0.00 | $1,137,847.88 |
| ASMT-NRC-2016-0172(K) | 1-Jul-15 | 30-Sep-15 | $730,742.27 | $0.00 | $94,996.46 | $164,417.02 | $78,714.68 | $1,068,870.43 | $0.00 | $1,068,870.43 |
| ASMT-NRC-2016-0172(L) | 1-Oct-15 | 31-Dec-15 | $1,163,339.14 | $0.00 | $133,784.10 | $209,401.03 | $108,682.18 | $1,615,206.45 | $0.00 | $1,615,206.45 |
| ASMT-NRC-2016-0172(M) | 1-Jan-16 | 31-Mar-16 | $701,790.74 | $0.00 | $70,179.00 | $31,580.59 | $51,016.15 | $854,566.48 | $0.00 | $854,566.48 |
| ASMT-NRC-2018-0044(A) | 1-Apr-17 | 30-Jun-17 | $830,791.23 | $0.00 | $13,269.80 | $0.00 | $8,915.23 | $852,976.26 | $300,000.00 | $552,976.26 |
| ASMT-NRC-2018-0044(B) | 1-Jul-17 | 30-Sep-17 | $437,657.02 | $0.00 | $3,876.58 | $0.00 | $2,557.24 | $444,090.84 | $50,000.00 | $394,090.84 |
| TOTALS: | | | $8,646,177.21 | $0.00 | $511,274.81 | $975,178.98 | $449,437.77 | $10,582,068.77 | $4,311,827.25 | $6,270,241.52 |

# EXHIBIT 4

## ATB Notice of Levy

# EXHIBIT 4

## ATB Notice of Levy

218-31609

6/27

| 1. E/C CONTROL NUMBER: | **DEPARTMENT OF THE TREASURY** |
|---|---|
| EC-NRC-2018-0013 | ALCOHOL AND TOBACCO TAX AND TRADE BUREAU<br>**NOTICE OF LEVY** |

| 2. ISSUANCE DATE | 3. INITIATING TTB OFFICE *(Division, City and State)*<br><br>NRC, Cincinnati, Ohio | 4. INITIATING TTB OFFICE TELEPHONE NUMBER<br>( 513 )684-2382 |
|---|---|---|

| 5. TO:<br>Zion Bank<br>Attention: Garnishments & Levy<br>1875 South Redwood Rd.<br>Salt Lake City Utah 84104 | 6. TAXPAYER NAME AND ADDRESS<br>Howell Munitions & Technology, Inc., as constructive trustee, nominee, and/or alter ego of<br>Twin River Contract Loading, Inc.<br>815 D Street, Lewiston, ID 83501 |
|---|---|

| 7. REMIT TO:<br>TTB National Revenue Center<br>550 Main Street Suite 8002<br>Cincinnati, Ohio 45202 | 8. TAXPAYER IDENTIFICATION NO.<br><br>████████████ |
|---|---|

### 9. DESCRIPTION OF LIABILITY

| TYPE OF TAX<br>(a) | TAX PERIOD ENDED<br>(b) | UNPAID ASSESSMENT BALANCE<br>(c) | ADDITIONAL PENALTIES & INTEREST<br>(d) | TOTAL<br>(e) |
|---|---|---|---|---|
| See Attached | See Attached | See Attached | See Attached | See Attached |

| THIS LEVY WILL NOT ATTACH TO ANY INDIVIDUAL RETIREMENT ACCOUNT (IRA), RETIREMENT PLAN BENEFITING SELF-EMPLOYED INDIVIDUALS, OR ANY OTHER QUALIFIED PLAN IN YOUR POSSESSION OR CONTROL. | 10. TOTAL AMOUNT DUE ➤ | $  4,676,491.24 |
|---|---|---|

**11. Interest and late payment penalty have been figured to** 12/30/2017

Chapter 64 of the Internal Revenue Code provides a lien for the above tax and statutory additions. Notice and demand, as required by the Internal Revenue Code, has been made, and the taxpayer has neglected or refused to pay. This amount is still due, owing, and unpaid. All property, rights to property, money, credits, and bank deposits now in your possession and belonging to this taxpayer (or for which you are obligated) and all money or other obligations you owe this taxpayer, are levied upon for payment of the tax, plus all additions provided by law. Demand is made on you either to pay this tax liability or pay any smaller amount that you owe this taxpayer.

**Money on deposit at banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must be held for 21 days from the day you receive this levy before it is sent to us along with any interest the taxpayer will earn during that time. In all other cases, you must turn over the taxpayer's property, money, credits, etc. just as though the taxpayer had demanded it.**

Please make your check or money order payable to the Alcohol and Tobacco Tax and Trade Bureau. Write on your payment the taxpayer's name, the taxpayer identification number, the type of tax, and tax period shown above, and the words "LEVY PROCEEDS". Complete the back of Part C and mail it to us with your payment in the enclosed envelope. Keep Part A for your records and give Part B to the taxpayer within 2 work days. **If you do not owe funds to this taxpayer, please complete the back of Part C and return all copies using the enclosed envelope.** Make reasonable efforts to identify all accounts in the taxpayer's name using Address, Social Security, and/or Employer ID number as a minimum. Do not offset funds the Taxpayer owes you without contacting the appropriate TTB Office shown above by phone for instructions.

| 12. SIGNATURE OF TTB AUTHORIZED OFFICIAL | 13. TITLE |
|---|---|
| *Thurla F. Skora*   Digitally signed by Thurla F. Skora<br>Date: 2018.05.31 14:40:51 -04'00' | Director, NRC |

TTB F 5652.1 (04/2009)

PART A – ADDRESSEE'S COPY

# Excerpts from the Internal Revenue Code

### SEC. 6331. LEVY AND DISTRAINT

**(b) Seizure and Sale of Property**-The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

**(c) Successive seizures**-Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### SEC. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY

**(a) Requirement**-Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

**(b) Special rule for life insurance and endowment contracts**

(1) **In general**-A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) **Satisfaction of levy**-Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323(i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) **Enforcement proceedings**-The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

**(c) Special rule for banks**-Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after

**(d) Enforcement of levy**

(1) **Extent of personal liability**-Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331(d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) **Penalty for violation**-In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

**(e) Effect of honoring levy**-Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property or (discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### SEC. 6333. PRODUCTION OF BOOKS

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### SEC. 6334. PROPERTY EXEMPT FROM LEVY

**(a) Enumeration**-There shall be exempt from levy

(1) **Wearing apparel and school books**-Such items of wearing apparel and such school books as are necessary for the taxpayer or for members of his family;

(2) **Fuel, provisions, furniture, and personal effects**-So much of the fuel, provisions, furniture, and personal effects in the taxpayer's household, and of the arms for personal use, livestock, and poultry of the taxpayer, as does not exceed $6,250 in value;

(3) **Books and tools of a trade, business, or profession**-So many of the books and tools necessary for the trade, business, or profession of the taxpayer as do not exceed in the aggregate $3,125 in value.

(5) **Undelivered mail**-Mail, addressed to any person, which has not been delivered to the addressee.

### SEC. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY

**(a) Release of levy and notice of release**

(1) **In general**-Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) **Expedited determination on certain business property**-In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) **Subsequent levy**-The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

**(b) Return of property**-If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return—

(1) the specific property levied upon,

(2) an amount of money equal to the amount of money levied upon, or

(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 9 months from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

**APPLICABLE SECTIONS OF INTERNAL REVENUE CODE**

**6321.** Lien for Taxes
**6322.** Period of Lien
**6325** Release of Lien of Discharge of Property
**6331** Levy and Distraint
**6332** Surrender of Property Subject to Levy
**6333** Production of Books
**6334** Property Exempt From Levy
**6343** Authority to Release Levy and Return Property
**7428.** Civil Actions By Persons Other Than Taxpayers
**7429.** Review of Jeopardy Levy or Assessment Procedures

For more information about this notice, please call the phone number on the front of the form.

**TTB F 5652.1 (04/2009)**
**REVERSE OF PARTS A, B, D & E**

Attachment to Levy for:
Jersey Artisan Distilling,

Jersey Artisan Distilling
32 B. Pier Lane West
Fairfield, NJ 07004

| | A | D | E | F | G |
|---|---|---|---|---|---|
| 1 | Type of Tax (a) | Tax Period Ended (b) | Unpaid Assessment Balance (c) | Additional P&I (d) | Total (e) |
| 2 | FET | 6/30/2015 | $1,137,847.88 | $0.00 | $1,137,847.88 |
| 3 | FET | 9/30/2015 | $1,068,870.43 | $0.00 | $1,068,870.43 |
| 4 | FET | 12/31/2015 | $1,615,206.45 | $0.00 | $1,615,206.45 |
| 5 | FET | 3/31/2016 | $854,566.48 | $0.00 | $854,566.48 |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | Total of all assessments | | 4,676,491.24 | 0.00 | 4,676,491.24 |