Timothy A. Lukas, Esq. (NV Bar No. 4678)
**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Tel: (775) 327-3000
Fax: (775) 786-6179
Email: ECFlukast@hollandhart.com

*Attorneys for Z.B., N.A.*
  *dba Zions First National Bank*

# THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>X-TREME BULLETS, INC.,<br>  a Nevada corporation,<br><br>                         Debtor. | Case No.: 18-50609-BTB<br><br>Chapter 11<br><br>**DECLARATION OF VALERIE L. GRINDLE IN SUPPORT OF OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES**<br><br>Hearing Date:   June 12, 2018<br>Hearing Time:   2:00 PM |

I, VALERIE L. GRINDLE, declare under penalty of perjury as follows:

1. I am a Consultant with CFO Solutions, LLC dba Advanced CFO in Boise, Idaho.

2. I have personal knowledge of the transactions and circumstances described herein unless stated and would testify about the same before this Court.

3. Attached hereto as **Exhibit 1** is a copy of my Career Highlights in business and reorganizations.

4. I am the Assistant Chief Restructuring Office ("ACRO") of Howell Munitions & Technology, Inc. ("HMT") as well as nine other entities controlled directly or indirectly by David Howell pursuant to the CRO Agreement executed by the Parties on April 23, 2018.

Page **1** of **5**

5.  Starting in early April, Zions First National Bank and Mr. Howell requested the services of Mr. Matthew McKinlay and CFO Solutions to act as the Chief Restructuring Officer for a set of companies operating primarily Lewiston, Idaho. Both Mr. McKinlay and I sat through multiple interview and conference calls with Mr. Howell, Howell Munitions' then Director of Finance and Risk Management, Angela Smith, and his counsel, Samuel T. Creason, Esq. of the law of firm of Creason, Moore, Dokken & Geidl, PLLC located in Lewiston, Idaho. During one of the conference calls, Mr. Howell asked me several detailed questions regarding my experience in similar types of engagements. I provided examples where I had served as a CRO or CEO of companies that were in severe financial distress. Pursuant to this, we discussed my manufacturing experience being closely aligned with the business of Howell Munitions. After completing the highly negotiated process with counsel, Mr. Howell and a set of companies entered into a Chief Restructuring Officer Agreement which I also executed. A true and complete copy is attached hereto as **Exhibit 2**.

6.  I have reviewed the Declaration of David C. Howell in Support of Debtor's Motion for Joint Administration of Related Chapter 11 Cases and it contains numerous inaccuracies and misstatements of fact. We do not work for Zions National Bank and are not the "Bank Appointed CRO". We were appointed the CRO of HMT and its related affiliates pursuant to the CRO Agreement with the full knowledge, consent and approval of Mr. Howell.

7.  Shortly after lunch on Thursday, June 7, 2018, David Howell texted me (a usual manner of our communications) that he wanted to meet that afternoon on a "couple of minor issues at 4:30". I responded to him that could not meet then as I had scheduled meetings for the remainder of the afternoon, but I had time on Friday morning. Shortly after 4:30 p.m., David Howell ("Mr. Howell"), Stephen Howell (David's brother) and Officer Nike Krakalia of the City of Lewiston, Idaho, opened my closed door at the HMT office and entered without invitation. I was on a scheduled telephone conference at the time.

Declaration of Valerie L Grindle in Support of Opposition to Motion for Joint Administration - X-Treme

8.  When I told him I could not talk with him at that time, Mr. Howell stated that I would talk with him and reached across my desk and hung up my telephone conversation. He told me he had terminated the CRO Agreement, and I needed to leave the building immediately. I informed him that he had no unilateral authority whatsoever to do that. Mr. Howell told me he absolutely had the authority to do so and demanded I leave, which the police officer with him also told me in a forceful manner that Mr. Howell had the authority to terminate the CRO Agreement and I needed to comply. I was never shown any paperwork whatsoever of these claims.

9.  During our conversations, Mr. Howell, Stephen Howell and Officer Krakalia stood in front of my desk blocking any exit from my office. I demanded to be allowed to shut down my computer which is my personal property and to make a phone call as I felt threatened by the conduct of Mr. Howell and Officer Krakalia and wanted to make sure those who had been on the telephone with me knew that I was ok. Mr. Howell and the officer refused to allow me to make a phone call at which time I requested that I be able to text a party to the phone call again stating that I felt it was necessary to explain why I was terminated from the conference call. They questioned me as to who I wanted to text to which I responded "my partner". They allowed me to send one text, but as I was sending a very short text they told me to hurry up and became more confrontational. During the event, Mr. Howell and Officer Krakalia several times referred to one another by first name showing a high degree of familiarity with one another. I then began to shut down my computer and was forcefully told by Mr. Howell to hurry up and that I needed to leave immediately. As soon as my computer was shut down safely, I requested that Officer Krakalia reach down and unplug the power cord that was adjacent to his feet and which I could not reach to which he refused. Stephen Howell then unplugged it for me. I then placed my computer and peripherals into my briefcase along with my personal notebook and requested that Officer Krakalia escort me to the restroom to which he consented as Mr. Howell and Stephen Howell left my office and entered another office. Officer Krakalia was standing outside the restroom when I exited and seemed noticeably less hostile as he escorted me out the door.

Page **3** of **5**

10. At the time of my unauthorized removal from the HMT headquarters building, HMT had approximately 64 employees in Lewiston, Idaho. These include employees providing services for the debtor entities as well as other non-debtor entities. There were also two part-time HMT employees who provide maintenance and care of X-Treme Bullets' mothballed bullet manufacturing facility in Carson City. Except for the part-timers in Carson City all of HMT employees reside in and around Lewiston, Idaho.

11. Subsequent to my removal from the headquarters in Lewiston, Mr. Howell terminated the Director of Manufacturing & Distribution for HMT, Mr. Chris Hayes and a Nez Perce County Sheriff's Deputy served him with a Uniform Notice Of Trespass the following evening. Mr. Hayes had been the Director of Manufacturing & Distribution at HMT since February 20, 2017, and in my experience with him, he had performed his duties well.

12. I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 12, 2018.

*/s/ Valerie L. Grindle*
VALERIE L. GRINDLE

**CERTIFICATE OF SERVICE**

I am, and was when the herein described mailing took place, a citizen of the United States, over 18 years of age, and not a party to, nor interested in, the within action; that on June 12, 2018, I served a true and correct copy of the foregoing **DECLARATION** as follows:

**Electronic Mail Notice List:**

- STEPHEN R HARRIS    steve@harrislawreno.com, hannah@harrislawreno.com, norma@harrislawreno.com
- ROBERT E. OPERA    ropera@wcghlaw.com, pj@wcghlaw.com, stacyly@wcghlaw.com
- U.S. TRUSTEE - RN - 11    USTPRegion17.RE.ECF@usdoj.gov

DATED: June 12, 2018.

/s/ Jeanette Sparks

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

- 5 –

# EXHIBIT 1

## Grindle Resume

# EXHIBIT 1

## Grindle Resume

# Valerie L. Grindle
_____

## Career Highlights

Summit Executives, LLC, Eagle, ID/Advanced CFO, Boise, ID                2012 - Present
**Founder/Consultant**
Provide interim/contract C-level executive leadership and consulting services.
- Completed turnaround of a HVAC and specialty metals fabrication and installation company as **Chief Restructuring Officer** and returned company to profitability within 10 months after multi-year losses. Restructured management team, redesigned budgeting, bidding, project management and operational procedures, negotiated loan extensions to avoid foreclosure, designed short term cash flow management protocols, managed banking, external tax/audit and surety relations, revised percentage completion costing methodology and directed complete overhaul of accounting processes to ensure GAAP compliance, implemented human resource policies in accordance with the ACA and other government regulations.
- Served as **Chief Operating Officer** of a siding and window installation company attempting to recover from downturn in construction industry. Provided cash management and financial statement preparation/analysis services, implemented percentage completion cost accounting, redesigned project management system, mentored Owner/President, negotiated sale of real estate, managed bank relations under Forbearance Agreement and developed restructuring options.
- Directed finance, accounting, risk management, IT, HR and legal affairs as **Chief Financial Officer** of a producer of large scale modular buildings. Improved cash management system, coordinated litigation defense preparation and proceedings with outside counsel, developed contract management system, analyzed tax and labor ramifications of establishment of foreign subsidiary, implemented improved hiring and training process to decrease workers comp claims.
- Served as **Controller** for rapidly growing pet product distributor as they began to manufacture product previously outsourced to contract manufacturer. Worked closely with operations to design protocol to ensure proper lot controlled tracking of all raw materials, packaging, WIP and finished goods by product, designed reporting system to enhance sales team's effectiveness, aided in implementation of expanded risk management and other programs required by new private equity investor group.
- Provided **strategic planning** services for various owners seeking to enhance performance of their companies.

PCS Edventures!.com, Inc., Boise, ID                2011 - 2012
**Chief Executive Officer, Director**
Full P & L responsibility for the consolidated operations of a publicly held international educational services company with wholly owned Canadian subsidiary. Increased sales by 37% through targeted marketing and improved sales tracking, developed strategy for increasing synergies between parent company and subsidiary, evaluated strategic partners, negotiated vendor and international customer contracts, re-established management credibility with majority shareholders and lenders, directed outside counsel to achieve settlement of class action suit and SEC investigation from prior administration, directed board meetings.

**Vice President Finance and Administration, Chief Financial Officer, Chief Compliance Officer**
Directed finance, accounting, risk management, IT, HR, legal affairs and purchasing. Negotiated new terms for debt financing, designed and presented financial reporting to Board of Directors, managed external audit, tax compliance and banking relations, evaluated new sourcing for key products, negotiated new property and casualty, D & O and employee benefit coverages, evaluated business processes and implemented new control procedures.

Great American Appetizers, Inc., Nampa, ID                                             2009 - 2010
**Chief Financial Officer**
Directed all finance, accounting, risk management, IT, logistics and customer service activities for privately held manufacturing company. Secured SBA financing for major expansion, orchestrated strategic planning process to provide focus for executive decision making, implemented cost accounting and financial reporting systems to be GAAP compliant and to enhance gross margin analysis by product. Negotiated enhanced insurance coverage including property and casualty, product liability, worker's compensation and employee benefits. Developed IT policies and procedures and instituted an outsourced managed service plan to upgrade technological capabilities. Designed streamlined process for developing and launching new products to improve time to market, gross margin and customer focus.

Grindle & Associates, Denver, CO & Tucson, AZ                                         1996 - 2009
**President**
Established & successfully operated consulting practice to provide interim C-level executive services.
- Built new learning adventures business as **Executive Officer** of non-profit community outreach entity within a major university from the ground up and generated revenue within four months. Created vision statement, developed and executed strategic business plan, designed programs and events, established all business processes and protocols, developed strategic alliances, collaborated with area organizations, directed media and marketing plan, established volunteer program, led all fund raising activities, managed relationships with all donors, governmental agencies and stakeholders.
- Managed accounting, finance, IT and HR as **Interim Chief Financial Officer** for an aerospace technology firm. Evaluated accounting software and recommended improvements, streamlined business processes, aided in transformation from R&D to manufacturing company.
- Analyzed all financial/administrative protocols as **Interim Chief Financial Officer** for trade association undergoing rapid growth. Recommended and implemented organizational restructuring, procedural controls and facilities utilization plan improvements. Negotiated resourcing of outside audit function, enhanced membership services.
- Orchestrated a rapid turn-around as **Chief Executive Officer** and Member of the Board of Directors of a pharmaceutical reverse distribution company. Recruited and developed new management team, streamlined operational and business practices, evaluated and modified major IT conversion project, renegotiated bank line of credit, attracted new equity investors. Expanded product lines into new vertical markets, led all business development activities, directed facilities expansion, prepared and presented all Board reporting. Grew sales consecutively for three years and positioned company for private equity investors' exit strategy.
- Spearheaded new budgeting and sales forecasting system as **Chief Financial Officer** of the North American division of a software development firm. Formulated employee recruiting, training and development program as preparation for massive growth in sales, initiated strategic plan, managed budgets, served as primary liaison with Australian corporate headquarters.
- Co-created **mentor** and **advisory board** programs for local business incubator. Coached entrepreneurs, served on advisory panels, evaluated business plans, recommended strategies. **Negotiated** compensation package for senior executives during acquisition of their privately held firm. Conducted financial/management **due diligence** on potential acquisitions for a private equity firm.

Tele-Communications, Inc., Englewood, CO                                                    1992 - 1995
**Vice President**
Directed tax, SEC, consolidation, accounting operations and 8 regional controllers (total staff 300+) for Fortune 500 cable conglomerate.  Redesigned financial systems and processes to handle numerous acquisitions, instituted new management evaluation and development plan, created procedures and revenue optimization as preparation for adaptation of 1992 Cable Act.

Tenneco Inc., Houston, TX                                                    1990 - 1992
**President**, Houston Oil & Minerals Exploration
Promoted after corporate divestiture of minerals division.  Directed the operation of remaining gold mines, managed special projects and restructuring activities for the CEO of Tenneco Inc., a Fortune 500 conglomerate.

**Vice President and Chief Financial Officer**, Tenneco Minerals Company, Denver, CO
Forged the sale of the primary assets of the company, targeted strategic buyers and negotiated a 20% premium over the investment banker's valuation with a significant improvement in employees' terms.  Analyzed and approved major capital expansion project, selected and implemented new purchasing system, built strong business partnership as member of Management Committee of joint venture with Asahi Glass, revitalized management reporting.

Robert Waxman, Inc., Denver, CO                                                    1988 - 1990
**Controller**
Managed business operations, IT and finance of a $40 million retail/industrial imaging firm.  Negotiated leases of new equipment, improved POS processes, and strengthened inventory control procedures.

Eli Lilly and Company, Indianapolis, IN                                                    1982 - 1987
**Manager of Financial Planning**
Gained a solid foundation in accounting and finance including treasury management, international cost accounting, hedging strategies, budgeting and financial analysis/reporting through rapid promotions as part of this Fortune 500 pharmaceutical firm's leadership development program.

## Education & Licenses

**M.S. Management**, Krannert School of Management, Purdue University, Dean's List
**B.S. Business Administration**, Colorado State University, with Honors
**Certified Public Accountant**, Indiana (inactive)
**Licensed Real Estate Agent,** Arizona (inactive)
**Certification**, Northwestern University Mergers & Acquisition Program
**Private Pilot**, Single Engine Land
**Certified Scuba Diver**

# EXHIBIT 2

## Chief Restructuring Officer Agreement

# EXHIBIT 2

## Chief Restructuring Officer Agreement

## Chief Restructuring Officer Agreement

This Chief Restructuring Officer Agreement (the "Agreement") is made effective this 20th day of April, 2018, by and between the following: David Howell ("Owner"), Matthew McKinlay ("CRO"), Valerie Grindle ("Assistant CRO"), Z.B., N.A. dba Zions First National Bank ("Zions"), and the following entities (collectively the "Company"): Ammo Load Worldwide, Inc.; Big Canyon Environmental, LLC; Clearwater Bullet, Inc.; Freedom Munitions, LLC; Howell Machine, Inc.; Lewis-Clark Ammunition Components, LLC; Twin River Contract Loading, Inc.; X-Treme Bullets, Inc.; Howell Munitions & Technology, Inc.; and Components Exchange, LLC. Owner, CRO, Assistant CRO, Zions, and the Company shall be collectively referred to herein as Parties.

1.   Company agrees to employ Matthew McKinlay of CFO Solutions, LLC dba Advanced CFO as Chief Restructuring Officer ("CRO") for the Company with the authority to employ and direct certain additional consultants to assist him, collectively the "CRO Team". Valerie Grindle as Assistant CRO will serve as the on-site lead of the CRO Team.

2.   CRO is authorized to perform the duties of the CRO of the Company to manage the business and operational affairs of the Company consistent with the role of the President and Treasurer or Manager, as appropriate, of the Company, subject to oversight of Zions and with the advice of an advisory board (the "Advisory Board"). The members of the Advisory Board shall include a representative of Zions, Angela Smith ("Smith") and such other members who are willing to serve and who are acceptable to Zions and Smith. The CRO Team shall consult with the Advisory Board as the CRO deems appropriate in the execution of his duties. The Advisory Board will not, however, have authority to approve or disapprove decisions made or actions taken by the CRO, it being the agreement of the Parties that the Advisory Board to provide advice to the CRO as appropriate under this Agreement. Except as otherwise provided, the CRO Team shall have authority over the operational, employment, accounting, and record keeping needs of the Company, and shall specifically endeavor to improve accounting and financial controls at the Company, as well as record keeping. The CRO Team shall have authority to sell Company assets with the consent of Zions. The CRO Team shall be responsible for filing monthly reports with the Company and Zions. CRO has the authority to provide periodic reports to Zions as it deems appropriate. Neither the CRO nor the CRO Team has any responsibility to file any federal, state or local tax returns, but will provide oversight as needed for the reporting and filing of the returns by the appropriate employees of the Company. The CRO shall have authority on behalf of the Company to consent to the appointment of a receiver, or to file a petition or consent to an order for relief under Title 11 of the United States Code.

3.   In addition, the CRO Team will assist the Company in its restructuring efforts that the Company and Zions request from time to time. The services are subject to change as mutually agreed among CRO, the Company and Zions.

4.   As part of its services, the CRO Team may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that the CRO Team participates in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not the CRO Team.

5.   Should the Company become a debtor under Chapter 11 of the Bankruptcy Code, CRO will provide services to the Company until its retention is approved or disapproved by the court or until our Services have been transitioned to another firm.

6. Owner shall resign as President, Treasurer (if applicable) and Manager of each entity comprising the Company and during the term of this Agreement shall hold no office in the Company. Owner shall at all times fully cooperate with the CRO Team and shall take no action which interferes with the duties of CRO as outlined in this Agreement. During the term of this Agreement, CRO shall have all of the powers and authority granted to the President, Treasurer and/or Manager of each entity comprising the Company and no other officer or Manager of any such entity may exercise such power or authority without the consent of CRO. Assistant CRO will have such powers and authority as CRO may grant to Assistant CRO. No officer or manager of the Company shall take any action contrary to the actions of the CRO, Assistant CRO or the provisions of this Agreement during the term of this Agreement.

7. Owner and Company shall at all times act in good faith to support the CRO Team in performing its duties, and shall provide the CRO Team with access to all books and records related to the Company, including but not limited to, all accounting records, contracts for services to be provided by Company, union contracts, licenses, permits, applications, purchase and sale agreements, and insurance policies. The Company's owners, agents, and employees shall fully and timely cooperate with the CRO in connection with the performance of its duties, and are enjoined from interfering with the CRO's performance of such duties. In the event a dispute arises between the CRO and Owner, or any existing owner, officer, agent, or employee of the Company regarding their compliance with this paragraph, the CRO shall have the right to seek a Court order, on five (5) business days' notice, enforcing the terms of this Agreement.

8. At their sole discretion, upon fifteen (15) days' notice, the CRO and Assistant CRO may resign their employment by the Company and terminate their roles as CRO and Assistant CRO.

9. The Company shall indemnify the CRO Team on the same terms as provided to its other officers and directors under the corporate/limited liability company articles, bylaws, operating agreements, limited liability company agreements or other corporate/limited liability company governing documents (e.g., board, manager, member or shareholder resolutions) (collectively, the "Governing Documents") and applicable state law and can and will provide insurance coverage for the CRO and Assistant CRO under its D&O policy. In the event Company does not currently have a D&O policy, Company shall acquire a D&O policy which provides insurance coverage for the CRO and Assistant CRO on terms typical in the industry in which Company operates. To the extent CRO's authority under this Agreement conflicts with the authority of any other officer, manager or member of the Company pursuant to the Governing Documents, this Agreement shall control and Owner hereby represents and warrants that it has taken, caused to be taken, will take or will cause to be taken all actions necessary to authorize the foregoing.

10. The CRO Team shall have no liability to the Company or Owner for loss or diminution in value of or damage to the Company or its assets unless the loss, diminution in value, or damage is caused by an act or omission for which members of a board of directors of a private corporation organized and existing under the laws of Idaho, who vote to approve the act or omission, are liable to the corporation in cases in which the liability of directors is limited to the maximum extent permitted by Idaho statute or law.

11. The CRO Team shall have no personal liability to the Company or Owner except for loss or damage occasioned by fraud on the part of the CRO or Assistant CRO, by acts

intended by the CRO or Assistant CRO to cause loss or damage to the Company or Owner, or by acts or omissions for which an officer of a business corporation organized and existing under the laws of the State of Idaho are liable to the claimant under the same circumstances in cases in which the liability of directors is limited to the maximum extent permitted by Idaho statute or law.

12. The CRO Team shall be paid for its services at the rate of $295.00/hour for work performed by Matthew McKinlay, $250.00/hour for work performed by Valerie Grindle, and between $150.00 and $250.00/hour for work performed by the CRO's other consultants, at their current prevailing rates. In addition, the CRO Team shall be entitled to reimbursement for its reasonable expenses incurred in the performance of its duties on a monthly basis.

13. Zions may, but shall have no obligation to, advance to the Company funds necessary to pay all amounts payable to the CRO pursuant to this Agreement. All such advances shall be considered advances made pursuant to the terms of Loan No. 1 between Company and Zions and shall be secured by the Security Agreement executed by Company and the Trust Deed, Assignment of Rents, Security Agreement and Fixture Filing executed by Owner.

14. Work will commence upon the execution of this agreement, and receipt of a $25,000 retainer. The retainer will be applied toward the final invoice, with any remaining unused balance to be refunded to the Company.

15. The CRO Team may be terminated with or without cause upon 30 days written notice from the Company and Zions. Neither Owner nor Company shall have the right to terminate this Agreement or terminate the CRO's services under this Agreement, absent the prior written consent of Zions, which consent shall not be unreasonably withheld. No interested party, including Owner, shall be precluded, upon motion with a court of competent jurisdiction, from requesting the immediate modification of duties or removal of the CRO for cause shown.

16. This Agreement shall be interpreted and enforced in accordance with the laws of the State of Idaho. Subject to the provisions above, jurisdiction and venue of any action to enforce or interpret this Agreement shall lie exclusively in the state courts in Lewiston, Idaho or the federal courts in located in Coeur d'Alene, Idaho.

17. This Agreement and these Terms and Conditions constitutes the sole and entire agreement among the parties with respect to the items contained, and supersede any prior oral or written undertaking or agreement of any nature or description whatsoever. This Agreement may not be modified except by a writing signed by all of Company, CRO, Assistant CRO and Zions.

18. Neither party may assign any of its rights hereunder without the express written consent of the other party, which shall not be unreasonably withheld or delayed.

IN WITNESS WHEREOF the parties hereunder set their hands the day and year first above written.

**CHIEF RESTRUCTURING OFFICER:**

*/s/ Matthew McKinlay*

Matthew McKinlay

**ASSISTANT CRO:**

_____
Valerie L. Grindle

**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation

By: _____
David C. Howell, President

**BIG CANYON ENVIRONMENTAL, LLC**,
an Idaho limited liability company

By: _____
David C. Howell, Manager

**CLEARWATER BULLET, INC.**,
an Idaho corporation

By: _____
David C. Howell, President

**CHIEF RESTRUCTURING OFFICER:**

_____
Matthew McKinlay

**ASSISTANT CRO:**

_____
Valerie L. Grindle

**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation

By: _____
David C. Howell, President

**BIG CANYON ENVIRONMENTAL, LLC**,
an Idaho limited liability company

By: _____
David C. Howell, Manager

**CLEARWATER BULLET, INC.,**
an Idaho corporation

By: _____
David C. Howell, President

**CHIEF RESTRUCTURING OFFICER:**

_____
Matthew McKinlay

**ASSISTANT CRO:**

_____
Valerie L. Grindle

**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation

By: _____
David C. Howell, President


**BIG CANYON ENVIRONMENTAL, LLC**,
an Idaho limited liability company

By: _____
David C. Howell, Manager

**CLEARWATER BULLET, INC.,**
an Idaho corporation

By: _____
David C. Howell, President

**FREEDOM MUNITIONS, LLC**
an Idaho limited liability company

By: _____
David C. Howell, Manager


**HOWELL MACHINE, INC.**,
an Idaho corporation

By: _____
David C. Howell, President


**HOWELL MUNITIONS & TECHNOLOGY, INC.**
an Idaho corporation

By: _____
David C. Howell, President


**LEWIS-CLARK AMMUNITION COMPONENTS, LLC**,
an Idaho limited liability company

By: _____
David D. Howell, Manager


**TWIN RIVER CONTRACT LOADING, INC.**,
an Idaho corporation

By: _____
David C. Howell, President


Page 5 – CHIEF RESTRUCTURING OFFICE AGREEMENT

**X-TREME BULLETS, INC.**,
an Idaho corporation

By: _____
David C. Howell, president


**COMPONENTS EXCHANGE, LLC**,
an Idaho limited liability company

By: _____
David C. Howell, Manager


**OWNER:**

_____
David C. Howell, individually

**ZIONS:**

Z.B., N.A. dba Zions First National Bank


By: _____

Its: _____


10901788_1

**X-TREME BULLETS, INC.,**
an Idaho corporation

By: _____
    David C. Howell, president

**COMPONENTS EXCHANGE, LLC,**
an Idaho limited liability company

By: _____
    David C. Howell, Manager

**OWNER:**

_____
    David C. Howell, individually

**ZIONS:**

Z.B., N.A. dba Zions First National Bank

By: _____/s/_____

Its: _Senior Vice President_

10901209_1