_____
Honorable Bruce T. Beesley
United States Bankruptcy Judge

Entered on Docket
July 16, 2018

Timothy A. Lukas, Esq. (NV Bar No. 4678)
**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Tel: (775) 327-3000
Fax: (775) 786-6179
Email: ECFlukast@hollandhart.com

*Attorneys for Z.B., N.A.*
  *dba Zions First National Bank*

# THE UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>☐ X-TREME BULLETS, INC.,<br><br>☐ AMMO LOAD WORLDWIDE, INC.,<br><br>☐ CLEARWATER BULLET, INC.,<br><br>☐ FREEDOM MUNITIONS, LLC,<br><br>☐ HOWELL MACHINE, INC.,<br><br>☐ HOWELL MUNITIONS & TECHNOLOGY, INC.,<br><br>☐ LEWIS-CLARK AMMUNITION COMPONENTS, LLC,<br><br>☐ COMPONENTS EXCHANGE, LLC,<br><br>☒ All Debtors<br><br>Debtors and Debtors-in-Possession. | Jointly Administered under Case No.: 18-50609-BTB with<br><br>Case Nos. 18-50610-btb; 18-50611-btb; 18-50613-btb; 18-50614-btb; 18-50615-btb; 18-50616-btb; and 18-50617-btb<br><br>Chapter 11 Proceedings<br><br>**INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361, 362, AND 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND (IV) SCHEDULING A FINAL HEARING**<br><br>DATE:    June 15, 2018<br>TIME:    9:00 a.m. |

Having considered the motion (the "**Motion**") of Howell Munitions & Technology, Inc. and its affiliates, the above-captioned debtors and debtors in possession (the "**Debtors**"), requesting, pursuant to Sections 361, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Bankruptcy Rules 2002 and 4001, entry of: (1) an interim order (a) authorizing the Debtors, on an interim basis, to use any cash collateral of Z.B., N.A., dba Zions First National Bank ("**Zions**") and of any other secured claimant with an interest in cash collateral ("**Secured Claimant**"), including the Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau ("**TTB**") and providing adequate protection for any diminution in value of the prepetition lenders' liens in such collateral, (b) granting related relief; and (2) a final order (the "**Final Order**") granting the relief provided through this order (this "**Interim Order**") on a final basis and the Court having considered any objections, evidence and arguments presented at the hearing (the "**Interim Hearing**") and **BASED ON THE STIPULATION OF THE PARTIES, THE COURT HEREBY FINDS AS FOLLOWS:**[1]

### Jurisdiction

A.   This Court has jurisdiction over this Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

### Venue

B.   Venue for this Case and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Core Proceeding

C.   This matter is a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A),(D), and (M). The statutory predicates for the relief sought herein are Sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of this Court (the "**Local Rules**").

---

[1] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the Motion.

**Petition Date**

D.     On June 8, 2018, (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Nevada (this "**Court**"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Section 1107 and 1108 of the Bankruptcy Code.

**Committee**

E.     To date, the Office of the United States Trustee (the "**UST**") has not appointed an official committee of unsecured creditors, equity interest holders or other parties-in-interest in this Case.

**Notice**

F.     On June 13, 2018, pursuant to the terms of the Omnibus Ex-Parte Order Shortening Time [Docket No. 38] ("**OST Order**") the Debtors served copies of the Motion and notice of the Interim Hearing to all creditors and parties-in-interest entitled to such notice, including: (a) the UST, (b) those creditors holding the twenty (20) largest unsecured claims against the Debtors' estates, (c) counsel to Zions, (d) the TTB, served by email on June 14, 2018, (e) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (e) any other secured parties of records. Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with the terms of the OST Order and with Bankruptcy Rule 4001(a), (b), (c) and (d) and the Local Rules, and no other notice needs to be provided for entry of this Interim Order.

**Zions' Claims and Liens**

G.     Zions asserts that Zions holds valid, enforceable and allowable claims, in an aggregate amount of approximately $17,529,215 and that such claims are secured by duly perfected first-priority liens encumbering substantially all of the Debtors' assets. The Debtors reserve the right to challenge Zions's claims and liens.

**Federal Tax Liens**

H.     The TTB recorded a Notice of Federal Tax Lien ("**Tax Lien**") against Twin

- 3 –

River Contract Loading, Inc. ("**Twin River**") on October 19, 2016. The Tax Lien was filed subsequent to the filing by Zions of its UCC-1 Financing Statement. The TTB did not file a Tax Lien against any of the Debtors.

I.  On or about May 31, 2018, the TTB issued a Notice of Levy ("**Levy**") which was received by Zions on June 4, 2018. The Levy identified the taxpayer name as "Howell Munitions & Technology, Inc., as constructive trustee, nominee and/or alter ego of" Twin River.

J.  As a result of the receipt of the Levy, Zions removed $832,160.77 from HMT account ending xx0992 and $121.94 from HMT account ending xx0161 (the "**Funds**"), which Funds were placed into a suspense account at Zions.

K.  Zions and the Debtors assert that the TTB's lien, to the extent it is valid and enforceable, is enforceable only against the separate assets of Twin River and is not enforceable against the assets of the other Debtors.

L.  Zions asserts that Zions' lien against the Funds is superior to any lien TTB may have against the Funds.

### Binding Agreement and Good Faith

M.  The terms and conditions set forth in this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate, reflect the Debtors' exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Any agreements and arrangements authorized in this Interim Order have been negotiated at arms' length with all parties represented by experienced counsel.

### Cash Collateral

N.  For purposes of this Interim Order, cash collateral consists of all of the Debtors' property that constitutes cash collateral in which Zions and/or any Secured Claimant has an interest as provided in Section 363(a) of the Bankruptcy Code.

**Cause Shown**

The Debtors have an immediate and critical need to use Cash Collateral of Zions and any other Secured Claimant to continue the Debtors' ordinary course business operations and to maintain the value of the Debtors' bankruptcy estates. Zions has agreed to permit the Debtors to use the Collateral including Cash Collateral, on an interim basis, on the terms and conditions provided for herein, including the granting of adequate protection hereunder, solely in accordance with the Interim Budgets (as defined below). The adequate protection provided herein to Zions and any other Secured Claimant and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain the consent or non-objection of such parties and to provide adequate protection of any interests of Zions and any other Secured Claimant in the Cash Collateral.

O. Zions consents to the Debtors' use of any Cash Collateral solely for such purposes set forth in the Interim Budgets (as defined below) only in accordance with the terms and conditions contained in this Interim Order commencing on the Petition Date and expiring at 5:00 p.m. (prevailing Pacific Time) on the date of the Final Hearing (as defined below) (the "**Interim Period**"). The Interim Period may be extended with the consent of Zions from time to time as provided in Paragraphs 3 and 4(a) below.

P. The Debtors have requested that Zions permit the use of any Cash Collateral to provide funds to be used solely for such purposes set forth in the Interim Budgets (as defined in Paragraph 2 below) to avoid immediate and irreparable harm to the Debtors' bankruptcy estate, which will occur if this Interim Order is not immediately approved.

Q. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtors' interim use of Cash Collateral is necessary to preserve the bankruptcy estates, and will avoid immediate and irreparable harm to the Debtors, their bankruptcy estates and assets, before the expiration of the Interim Period.

R. Good, adequate and sufficient cause has been shown to justify the immediate

entry of this Interim Order pursuant to Bankruptcy Rule 4001(b) and (c).

S.  Pursuant to § 363(c)(2) and (e) of the Bankruptcy Code, the relief requested in the Motion is hereby APPROVED AND GRANTED as described herein.

## ORDER

Accordingly, it is hereby ORDERED as follows:

1. The Motion is hereby **GRANTED** in accordance with the terms and conditions set forth in this Interim Order and with the consent of Zions, to the form and entry of this Interim Order. Any objections and reservations of rights to the relief requested in the Motion that have not been previously resolved or withdrawn are hereby overruled and denied on their merits, or to the extent applicable, deferred to the final hearing (the "**Final Hearing**"). This Interim Order shall be a valid, binding obligation on all parties-in-interest and fully effective immediately upon its entry.

### Budget and Expenditures

2. The Debtors shall be permitted to use any Cash Collateral, except the Funds, solely to pay the expenses to the extent accrued and as incurred and described in the expenditures contained in the interim budgets attached, collectively, as **Exhibit A** (the "**Interim Budgets**") as the same may be extended in accordance herewith, provided, however, (a) the Debtors' total expenditures shall not exceed 7.5% of the aggregate amount of the applicable Interim Budget for each week, (b) the Debtors' line item expenditures shall not exceed 7.5% of any line item amount of the Interim Budget (collectively, the "**Variance**"); and (c) access to the Cash Collateral shall be made only in conformance with the expense line items in the Interim Budget (subject to only the Variance). Any expenditures in excess of such amounts shall require the prior written approval of Zions, or further order of the Court after appropriate notice. In order to address the timing of expenditures from week to week, unused budget line items in any weekly period due to the non-payment of the obligations during that week as specified in the Interim Budgets may be carried over and used by the applicable Debtors in subsequent weekly periods when the previously budgeted obligation occurs in normal course. Zions and

the Debtors reserve the right to amend the Interim Budgets on terms mutually acceptable to them, provided that a stipulation incorporating the amended budgets is filed with the Court. Notwithstanding the foregoing, subject to further order of the Court, the Funds shall be maintained in, and shall not be disbursed from, a suspense account at Zions during the Interim Period; the Debtors shall have the right at any time to seek from the Court, after appropriate notice, an order finding that the Funds are Cash Collateral and directing the release of the Funds to the Debtors and authorization for the Debtors to use the Funds pursuant to Section 363 of the Bankruptcy Code.

**Termination Date**

3. The term of this Interim Order and the Debtors' authority to use any Cash Collateral hereunder shall expire at 5:00 p.m. (prevailing Pacific Time) on the date of the Final Hearing (the "**Termination Date**"). The Debtors and Zions may extend the Termination Date, without further notice to creditors or order of this Court, provided that a stipulation extending this Interim Order (an "**Extension Stipulation**") signed by the Debtors' counsel and counsel for Zions is filed together with a copy of a new budget (a "**New Budget**") approved by Zions. Debtors shall provide Zions with written notice of the occurrence of a Termination Event (as defined below).

**Termination Events**

4. The Debtors' right to use any Cash Collateral under this Interim Order shall immediately and automatically terminate upon occurrence of any of the following events (each a "**Termination Event**"):

    a. 5:00 p.m. (prevailing Pacific Time) on July 25, 2018 or such later date as may be agreed by the Debtor and Zions;

    b. failure of the Debtors to adhere to the terms of this Interim Order or the Interim Budgets (including the Variance);

    c. entry of an order without prior consent of Zions (i) converting a Debtors' Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (ii) dismissing a Debtor's Chapter 11 case, (iii) appointing a trustee under

- 7 –

       Chapter 7 or Chapter 11 of the Bankruptcy Code or appointing an examiner with expanded power (powers beyond those set forth in § 1106(a)(3) and (a)(4)) in a Debtors' case; (iv) reversing, vacating or otherwise amending, supplementing or modifying this Interim Order; or (v) granting relief from the automatic stay to any creditor (other than Zions) holding or asserting a lien in the Cash Collateral;

d. upon a Debtors' commencement of, or an order entered relating to any proceeding, action for (i) the invalidation, subordination or other challenge of the Superpriority Claims (as defined below) or Adequate Protection Replacement Liens (as defined below); (ii) relief under § 506 of the Bankruptcy Code with respect to the Collateral; or (iii) any other relief which could reasonably be expected to result in a material impairment of Zions' rights;

e. upon the Debtor's obtaining an order approving use of Cash Collateral other than the application related to this Interim Order;

f. upon the Debtor's commencement, or an order entered relating to any proceeding or action seeking an order approving the sale of substantially all or a material portion of a Debtor's assets, whether done pursuant to one transaction or a series of transactions (i) without Zions' prior written consent; and (ii) without expressly providing for Zions' right to credit bid up to the full amount of its Obligations;

g. upon a Debtor's creation, incurrence, or allowance to exist of any postpetition liens or security interests on the Collateral or Adequate Protection Collateral other than those granted pursuant to this Interim Order without Zions' prior written consent;

h. (x) entry of an order reversing, staying for a period in excess of three business days, vacating or otherwise amending supplementing or modifying this Interim Order in a manner adverse to Zions, without Zions' prior written

consent or (y) the filing by the Debtors of a motion to serve, stay, vacate or otherwise amend, supplement or modify this Interim Order without Zions' prior written consent;

i. the filing of any chapter 11 plan or agreement (a "**Plan**") without Zions's prior written consent that provides for a restructuring of the Debtors that does not contain a provision for the indefeasible payment in full in cash of the Debtors' obligations to Zions on or before the effective date of such Plan.

j. the filing by the Debtors of a motion in these Chapter 11 cases without Zions' written consent (i) to obtain financing under § 364 of the Bankruptcy Code from any person than Zions; or (ii) to grant any lien or offering any collateral; and

k. the Debtor's failure to timely provide any of the documents required by Paragraphs 17 and 18 of this Interim Order, or upon three (3) business days' written notice to the Debtors that the Debtors have failed to comply with any other term of this Interim Order.

In the event that the Debtors should breach any provision of this Interim Order, Zions may give to the Debtors written notice of such breach ("Default Notice"). If the Debtors should fail to cure any such breach within five (5) calendar days after the service of the Default Notice, Zions's consent to the Debtors' use of any Cash Collateral under the provisions of this Interim Order shall immediately and automatically terminate and the Debtors shall cease any further use of any Cash Collateral hereunder; provided, however, that, notwithstanding any occurrence of any Termination Event, the Debtors reserve the right to seek from the Court an order authorizing the Debtors' use of any Cash Collateral on terms comparable to or different from those set forth herein.

**Termination Remedies**

5. If the Debtors' right to use any Cash Collateral has not been previously terminated pursuant to the provisions of this Interim Order, such right may be extended only upon Zions' written consent or further order of this Court. Zions shall have no

– 9 –

obligation to agree to such extension under any circumstances and may elect or not elect to agree to such extension as it determines in its sole and absolute discretion, provided that the Debtors shall have the right to seek authority from this Court to use any Cash Collateral on an expedited basis in the event that Zions does not agree to any such extension.

### Adequate Protection

6. Zions hereby represents that, for the Debtors' use of any Cash Collateral of Zions, Zions is entitled, pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, to adequate protection of its interests in Cash Collateral on account of the Debtors' use of Cash Collateral from and after the Petition Date, and the imposition of the automatic stay per § 362 of the Bankruptcy Code, and any other decrease in value of such interests on account of §§ 362 or 363 of the Bankruptcy Code or otherwise (the "**Diminution in Value**"). In consideration for the use of any Cash Collateral and as adequate protection for, and to secure payment for any aggregate Diminution in Value, Zions and any other Secured Claimant (a) shall be and are granted (effective upon the Petition Date and without the necessity of the execution or filing by the Debtors, Zions or any other Secured Claimant of any mortgage, deed of trust, security agreement, pledge agreement, financing statement, or otherwise) Adequate Protection Replacement Liens (as defined below); and (b) shall have the right to assert Superpriority Claims (as defined below) pursuant to Section 507(b) of the Bankruptcy Code (collectively, "**Adequate Protection**"). The Adequate Protection Liens shall have the same validity and priority, and shall be to the same extent, as any duly perfected and unavoidable Liens which Zions and any Secured Claimant enjoyed Pre-Petition, to the extent that any Cash Collateral is actually used by the Debtors. The Debtors, and any other party-in-interest, hereby reserve the right to assert that neither Zions or any other Secured Claimant has a valid, duly perfected and unavoidable lien encumbering Cash Collateral.

### Adequate Protection Replacement Liens

7. To the extent of any Diminution in Value, Zions and other Secured

Claimants are hereby granted, pursuant to §§ 361 and 363 of the Bankruptcy Code, valid, automatically perfected and enforceable additional first priority adequate protection replacement liens (the "**Adequate Protection Replacement Liens**") upon all of the Debtors' right, title and interest in, to, and under (a) any Cash Collateral which, in the absence of bankruptcy, would have been subject to the respective Liens, and with the same extent, validity and priority as any duly perfected and unavoidable pre-petition liens, including, without limitation, the Debtors' post-petition accounts receivable and post-petition gross receipts resulting from the Debtors' ordinary course business operations to the extent of the Debtors' use of Cash Collateral; and (b) the proceeds, products, rents and profits thereof (collectively, the "**Adequate Protection Collateral**").

8. Except as stated in this Order, the Adequate Protection Replacement Liens shall be, and hereby are, deemed duly perfected and recorded under all applicable federal, state and other laws as of the commencement of these cases to the extent of the validity, scope and perfection of such Liens pre-petition, and no notice, filing, mortgage or deed of trust recordation, possession, further order or other act shall be required to effect such perfection. The Debtors reserve any and all rights that they may have to challenge the validity or enforceability of the Liens, including, without limitation, on the basis that the Liens are avoidable.

### **Superpriority Claims**

9. Subject to any Carve-Out that may be subsequently agreed to and as further adequate protection for the Debtors' use of the Cash Collateral, and to protect against Diminution in Value, Zions and any other Secured Claimants shall have the right to assert administrative superpriority expense claims (the "**Superpriority Claims**"), as provided and to the full extent allowed by §§ 503(b) and 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever. The Debtors reserve the right to challenge any Superpriority Claim that may be asserted by Zions and by any other Secured Claimant and to pay any ongoing obligations, including fees and costs of

professionals employed in the Debtors' cases, pursuant to the Interim Budgets, in the absence of any order of the Court awarding to Zions such a Superpriority Claim.

### Additional Adequate Protection

10. As additional adequate protection, the Debtors will do the following:

   a. Retain a Chief Restructuring Officer. For the avoidance of doubt, the firm of Glass Ratner is acceptable to Zions for potential selection as Chief Restructuring Officer ("CRO") of the Debtors.

   b. The Debtors shall utilize Zions as the sole depositary institution for their bank accounts and cash management during the term of this Order;

   c. The Debtors' ability to withdraw, transfer, or otherwise use funds on deposit in bank accounts at Zions shall be limited to collected funds and, under no circumstances shall Zions be required to pay any item or accept presentment against uncollected funds (an "Overdraft"), and Zions is authorized to return any item or presentment that would result in an Overdraft. If Zions, in its sole and absolute discretion, allows an Overdraft in any of Debtors' accounts, Debtors agree that the amount of any such Overdraft shall be an Obligation and that Zions is entitled to offset the amount of such Overdraft from deposits into any Zions account of Debtors' regardless of the account from which the Overdraft item was paid or presented. Any Overdraft activity allowed by Zions shall not be deemed a course of conduct or waiver of the requirements of this subparagraph;

   d. The CRO shall, as promptly as warranted by the circumstances, confer with Debtors' prior CRO, Matt McKinlay and Valerie Grindle, together with Zions and its financial advisors and other professionals, to obtain information pertinent to the administration of the estate; Zions shall cooperate in scheduling meetings and calls with these individuals;

   e. During the term of this Order, the CRO's retention may be terminated only by an order entered by this Court; and

     f.    During the term of this Order, the Debtors and David Howell are enjoined from interfering with the CRO's administration of the bankruptcy estate, provided, however, that the Debtors and Mr. Howell retain the right to file a motion to terminate the employment of the CRO with the approval of the Court after notice to creditors and a hearing thereon.

### Right to Seek Modified Adequate Protection

11. Zions and other Secured Claimants may request after the Termination Date Court approval for additional or alternative adequate protection. The Adequate Protection Replacement Liens and the Superpriority Claims shall be valid and enforceable against any trustee or any other estate representative appointed in these cases or any successor cases and any "custodian" (as defined in the Bankruptcy Code), and/or upon the dismissal of these cases or any successor cases.

12. Nothing contained in this Interim Order or otherwise shall constitute nor be deemed to constitute, directly or indirectly, by implication or otherwise, a waiver by Zions of its right to assert that the Debtors are obligated under the Loan Documents to pay (i) the default interest rates specified therein, (ii) interest on interest, and/or (iii) other fees, costs and other charges specified therein. The Debtors reserve the right to challenge any such claims.

13. The Debtors reserve the right to request from the Court authority to use any Cash Collateral on terms different from those set forth herein, including, without limitation, pursuant to budgets different from the Interim Budgets.

### Other Valid Liens

14. Notwithstanding anything contained herein, all Adequate Protection Replacement Liens and the Superpriority Claims are subject to other liens, if any, that have priority over Zions' Liens and any other Secured Claimant's Liens.

### Reporting Requirements

15. As additional adequate protection for its use of any Cash Collateral, the Debtors will provide Zions with weekly reporting information regarding prospective asset

sales, business plans, updated cash flow forecasts and budgets. Such information shall be of a nature, quality, and frequency to enable Zions to monitor its interests in the Collateral and Cash Collateral. The Debtors shall also have weekly (or less frequently as may be agreed between the Debtors and Zions) calls with Zions and its advisors, during regular business hours and with reasonable advance notice, on topics related to the Debtors' operations, cash position, Zions' rights under this Interim Order or the Final Order, and the cases.

16. Following entry of this Interim Order, before the close of business on Wednesday of each week before the Termination Date, the Debtors shall deliver to Zions and its counsel, a written (i) report summarizing the Debtors' inventory and raw materials levels, accounts receivable, accounts payable and actual cash flow ending on Friday of the prior week, as compared to the cash flow for such week as set forth in the Budget (the "**Cash Flow Report**"), each such report to be in a form and with such level of detail as shall be reasonably acceptable to Zions; and (ii) report setting forth the Debtors' working capital position (including a summary of priority payables) ending on Friday of the prior week, such report to include all supporting ledgers, analysis and other information, each such report to be in form and with such level of detail as shall be reasonably acceptable to Zions. The Debtors shall immediately make available to Zions or any of its agents (including professionals) supporting documentation for all receipts and expenditures, including, but not limited to, bank statements, contracts, invoices, copies of checks or other evidence of payment, and general ledgers.

17. In addition, the Debtors will provide Zions with the following information:
   a. A copy of any plan to be filed in the Case as soon as reasonably practicable and in sufficient time to enable Zions to review such Plan before it is filed, together with a reconciliation to any prior plan;
   b. Presentations by the Debtors or its advisors to Zions at times and places as Zions may reasonably request in writing (including via email);
   c. Promptly, but in any event by the fifteenth (15) day of each calendar month,

a report as of the last day of the preceding calendar month, in form and detail reasonable acceptable to Zions, of an accounts payable aging, an accounts receivable aging, and monthly and year to date income statements, balance sheets and capital expenditures.

18. Failure to timely provide any of the reports required in the above Reporting Requirements shall be a Termination Event.

### Access to Premises

19. The Debtors shall provide Zions and any professional retained by Zions with reasonable access during normal business hours to (a) the Debtors' premises, and (b) any information or reports regarding the Debtors or these Chapter 11 cases that Zions may from time to time reasonable request.

### No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees

20. Nothing in this Interim Order or otherwise shall be construed to obligate Zions in any way to pay compensation to, or to reimburse expenses of any Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtors, or any Committee or any other official or unofficial committee in these cases, or of any other person or entity, or shall affect the right of Zions to object to the allowance and payment of such fees and expenses. Any professionals employed by the Debtors in the Debtors' Chapter 11 cases and the CRO shall have the right to apply to the Court for compensation of their fees and costs, including compensation on a monthly basis.

### Insurance Policies

21. The Debtors shall maintain, with financially sound and reputable insurance companies, insurance with respect to all of the Pre-Petition Collateral for all the purposes in accordance with the requirements of the Pre-Petition Security Documents (covering such risks and in amounts as shall be approved by Zions which approval shall

- 15 –

not be unreasonably withheld by Zions). Without any further action or notice, Zions shall be deemed to be named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors. Debtors shall provide Zions with copies of all insurance certificates promptly after receipt.

### **Binding Effect**

22.    Subject to Paragraph 2, the provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in these cases, including, without limitation, Zions, other Secured Claimants, any Committee, and the Debtors and their respective successors and assigns (including any Trustee, any examiner appointed pursuant to Section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of the Debtor or the Debtor's estate or with respect to the property of the estate of the Debtor), whether in the cases, in any successor cases, or upon dismissal of any such cases or successor cases; <u>provided, however</u>, that Zions shall have no obligation to permit the use of any Cash Collateral or to extend any financing to any Trustee or other responsible person appointed for the estate of the Debtors in any cases or successor cases.

### **No Third-Party Rights**

23.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

### **Enforceability**

24.    This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

25. <u>Headings</u>. Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken in consideration in, interpreting this Interim Order.

**Final Hearing**

26. A Final Hearing to consider entry of the Final Order is scheduled for July 25, 2018 at 2:00 p.m. (prevailing Pacific Time) at the United States Bankruptcy Court for the District of Nevada.

27. <u>Final Hearing Notice</u>. Within two (2) two business days after entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) (a) notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**") and (b) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.

**Objection Deadline**

28. The Final Hearing Notice shall state that any party-in-interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than July 11, 2018, at 5:00 p.m. (prevailing Pacific Time) (the "**Objection Deadline**"), which objections shall: (a) conform to the Bankruptcy Rules and the Local Rules; and (b) be served upon the following parties so as to be actually received no later than July 11, 2018, at 5:00 p.m. (prevailing Pacific Time): counsel for the Debtors; counsel for Zions; the United States Trustee for the District of Nevada; counsel for any Committee; and any party requesting notice pursuant to Bankruptcy Rule 2002.

**Reservation Of Rights**

29. The Debtors, any Committee appointed in the Debtors' cases and any other party-in-interest reserve any and all rights which they may have to challenge the validity, extent, priority and perfection of Zions's secured claims and to assert any and all claims and

1 | remedies which they may have against the Bank.

### Retention of Jurisdiction

3 | 30. The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

**IT IS SO ORDERED.**

Prepared and Submitted by:

  /s/ Timothy A. Lukas
TIMOTHY A. LUKAS, ESQ.
**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
775-327-3000
*Attorneys for Z.B., N.A.*
  *dba Zions First National Bank*

## **CERTIFICATION RE: RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

    ____ The court has waived the requirement set forth in LR 9021(b)(1).

    ____ No party appeared at the hearing or filed an objection to the motion.

    __X__ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

    /s/ Robert E. Opera                                      Approve/~~Disapprove~~
Robert E. Opera, Esq.
Andrew B. Levin, Esq.
Winthrop Couchot
Golubow Hollander, LLP
[Proposed] General Insolvency Counsel
for Debtors and Debtors-in-Possession


    /s/ Jared Day                                                  Approve/~~Disapprove~~
Jared Day, Esq.
Office of the U.S. Trustee


    /s/ Jeffrey C. Misley                                  Approve/~~Disapprove~~
Jeffrey C. Misley, Esq.
Sussman Shank LLP
Advanced CFO Solutions, L.C.

.

# # #