_____
Honorable Bruce T. Beesley
United States Bankruptcy Judge

Entered on Docket
October 18, 2019

ROBERT E. OPERA – California State Bar No. 101182
ropera@wcghlaw.com
PETER W. LIANIDES – California State Bar No. 160517
plianides@wcghlaw.com
ALASTAIR M. GESMUNDO – California State Bar No. 316573
agesmundo@wcghlaw.com
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

STEPHEN R. HARRIS – Nevada State Bar No. 001463
steve@harrislawreno.com
**HARRIS LAW PRACTICE LLC**
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600

General Insolvency Counsel
for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>☐ X-TREME BULLETS, INC.,<br>☐ AMMO LOAD WORLDWIDE, INC.,<br>☐ CLEARWATER BULLET, INC.,<br>☐ FREEDOM MUNITIONS, LLC,<br>☐ HOWELL MACHINE, INC.,<br>☐ HOWELL MUNITIONS & TECHNOLOGY, INC.,<br>☐ LEWIS-CLARK AMMUNITION COMPONENTS, LLC,<br>☐ COMPONENTS EXCHANGE, LLC,<br>☒ All Debtors.<br><br>Debtors and | Jointly Administered under<br>Case No. 18-50609-btb with<br><br>Case Nos. 18-50610-btb; 18-50611-btb;<br>18-50613-btb; 18-50614-btb; 18-50615-btb;<br>18-50616-btb; and 18-50617-btb<br><br>Chapter 11 Proceedings<br><br>**ORDER GRANTING DEBTORS' MOTION FOR ORDER AUTHORIZING: (1) SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS AND INTERESTS IN ACCORDANCE WITH THE PROVISIONS OF ASSET PURCHASE** |

|   |   |
|---|---|
| Debtors-in-Possession. | AGREEMENT; (2) ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (3) REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND ABANDONMENT OF PROPERTY |
|   | DATE: October 16, 2019<br>TIME: 10:30 a.m.<br>PLACE: Courtroom 2 (5th Floor)<br>C. Clifton Young Federal Bldg.<br>300 Booth Street<br>Reno, NV 89509 |

The matter of the Motion for Order Authorizing: (1) Sale of Substantially all of the Assets of the Debtors Free and Clear of Liens and Interests in Accordance with the Provisions of Asset Purchase Agreement; (2) Assumption and Assignment of Unexpired Leases and Executory Contracts; and (3) Rejection of Unexpired Leases and Executory Contracts and Abandonment of Property ("Sale Motion"), filed by the jointly-administered Debtors in the above-entitled Chapter 11 cases ("Debtors"), came on for hearing on October 16, 2019 at 10:30 a.m. before the Honorable Bruce T. Beesley, United States Bankruptcy Judge, in the above-entitled Court. The Debtors were represented by Robert E. Opera of Winthrop Couchot Golubow Hollander, LLP and by Stephen R. Harris of Harris Law Practice, LLC, their general insolvency counsel of record. Thomas R. Fawkes, Esq. of Goldstein & McClintock LLLP appeared on behalf of the Official Committee of Unsecured Creditors ("Committee"). Gerald P. Kennedy of Procopio, Cory, Hargreaves & Savitch LLP appeared on behalf of Kash CA, Inc. ("Kash CA"). Todd C. Ringstad of Ringstad & Sanders LLP appeared on behalf of David C. Howell ("Howell"). Boris Kukso, Trial Attorney, Tax Division of the United States Department of Justice appeared on behalf of the United States of America, on behalf of the Department of the Treasury Alcohol & Tobacco Tax and Trade Bureau ("TTB"). Other appearances, if any, were as set forth on the Court's record of the proceedings.[1]

Based upon the Sale Motion, the Declaration of J. Michael Issa [Docket No. 639] ("Initial Issa Declaration") and the Declaration of Daniel Kash [Docket No. 640] filed by the Debtors in

---

[1] Except as otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the Sale Motion.

- 2 -

support of the Sale Motion; the Statement Of Official Committee Of Unsecured Creditors In Support Of Debtors' Sale Motion [Docket No. 676] filed by the Committee in support of the Sale Motion; the Statement of David C. Howell in Support of Debtors' Motion for Order Authorizing: (1) Sale of Substantially all of the Assets of the Debtors Free and Clear of Liens and Interests in Accordance with the Asset Purchase Agreement; (2) Assumption and Assignment of Unexpired Leases; and (3) Rejection of Unexpired Leases and Executory Contracts and Abandonment of Property [Docket No. 680] ("Howell Lease Assignment Consent") filed by Howell with respect to the Sale Motion; the Response and Position Statement of Lessor 823 D Street, LLC [Docket No. 678] ("823 D Street Lease Assignment Consent") filed by 823 D Street, LLC ("823 D Street") with respect to the Sale Motion; the United States' Opposition to Debtors' Motion to Sell Free and Clear [Docket No. 675] ("Opposition"), the Declaration of Thomas Schmidt [Docket No. 675-8] ("Schmidt Declaration"), and the Declaration of Trial Attorney Boris Kukso [Docket No. 675-1] filed by the TTB in opposition to the Sale Motion; the Reply to United States' Opposition to Debtors' Motion to Sell Free and Clear [Docket No. 700] ("Debtors' Reply"), the Supplemental Issa Declaration [Docket No. 701], the Opera Declaration [Docket No. 702], the Smith Declaration [Docket No. 703] and the Evidentiary Objections [Docket No. 704] filed by the Debtors in support of the Debtors' Reply; the Response of Official Committee of Unsecured Creditors to United States' Opposition to Debtors' Motion to Sell Free and Clear [Docket No. 695] filed by the Committee in reply to the Opposition; the Reply Declaration of Timothy A. Lukas [Docket No. 696] filed by Zions in reply to the Opposition; the Reply Declaration of Daniel Kash [Docket No. 692] filed by Kash CA in reply to the Opposition; the Declaration of David C. Howell [Docket No. 694] filed by Howell in reply to the Opposition; the Declaration of J. Michael Issa Regarding Results of Bidding With Respect to Debtors' Assets [Docket No. 709] ("Issa Declaration Regarding Bidding Results") filed by the Debtors on October 11, 2019; the Stipulation Regarding Non-Material Modification of Advertising of Sale Motion Hearing [Docket No. 706] filed by the Debtors on October 11, 2019; the papers, pleadings and other documents on file in the Debtors' Chapter 11 cases, including, without limitation, the Court's Order Granting Debtors' Motion for

Order Approving Compromises of Controversies [Docket No. 611] ("Compromise Motion Order") entered by the Court on August 30, 2019 and the Court's Sale Procedures Order [Docket No. 649] entered by the Court on September 20, 2019; the representations and arguments of counsel at the hearing on the Sale Motion; and for good cause shown, the Court hereby finds, and concludes as a matter of law, that:

    A.    The Court has jurisdiction, pursuant to 28 U.S.C. sections 157 and 1334 and sections 105, 363 and 365 of the Bankruptcy Code, to approve the sale to Kash CA of the Purchased Assets pursuant to the Kash Asset Purchase Agreement entered into by and among Kash CA, on one hand, and the Debtors, on the other hand, a true and complete copy of which is attached hereto as Exhibit "1" and is incorporated herein by this reference, free and clear of all liens, claims, interests and Encumbrances (as such term is defined in Section 1.1(nn) of the Kash Asset Purchase Agreement) of any type or nature whatsoever (collectively, "Liens") pursuant to section 363(f) of the Bankruptcy Code. The Sale Motion is a core proceeding pursuant to 28 U.S.C. sections 157(b)(2)(A), (N), and (O). The statutory predicates for the relief requested by the Sale Motion are sections 105, 363 and 365 of the Bankruptcy Code.

    B.    The notice given of the hearing on the Sale Motion was appropriate and complied in all material respects with the requirements of the sale procedures ("Sale Procedures") approved by the Sale Procedures Order of the Court entered on September 20, 2019 [Docket No. 649], the Federal Rules of Bankruptcy Procedure ("Federal Bankruptcy Rules") and the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Nevada ("Local Bankruptcy Rules"), and such notice was otherwise good, sufficient and appropriate under the particular circumstances of the Debtors' cases, and no other or further notice of the Sale Motion or the hearing on the Sale Motion ("Sale Motion Hearing") is required in order to effectuate the relief granted in this Order. A reasonable opportunity to object to, or be heard with respect to, the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

1    C.    The Debtors engaged in fair and reasonable efforts, under the circumstances of these cases, to obtain a fair price for the Purchased Assets, and the consideration to be paid by Kash CA for the Purchased Assets pursuant to the Kash Asset Purchase Agreement is fair.

D.    The Debtors have complied materially with all Sale Procedures with respect to the sale of the Purchased Assets. The sale process with respect to the sale of the Purchased Assets was fair to all parties-in-interest and complied materially with all Sale Procedures.

E.    The Debtors served the written notice of the Sale Motion Hearing in accordance with the requirements of the Sale Procedures Order, the Federal Bankruptcy Rules and the Local Bankruptcy Rules. Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to bid for the Purchased Assets.

F.    No bids for the Purchased Assets were submitted, either before or at the Sale Motion Hearing, other than the bid made by Kash CA pursuant to the Kash Asset Purchase Agreement and, consequently, no Auction was conducted by the Debtors. The bid for the Purchased Assets submitted by Kash CA pursuant to the Kash Asst Purchase Agreement, therefore, was the highest and best bid for the Purchased Assets.

G.    The terms and conditions of the Kash Asset Purchase Agreement (i) are fair and reasonable, (ii) represent the highest and best offer for the Purchased Assets, and (iii) will provide, from a sale of the Purchased Assets, a greater recovery for the Debtors' creditors than would be provided by any other alternative for the sale or other disposition of the Purchased Assets. The Purchase Price provided by the Kash Asset Purchase Agreement constitutes fair consideration for the Purchased Assets. The Debtors' entering into and consummating the Kash Asset Purchase Agreement is a sound exercise of the Debtors' business judgment. The Sale Transaction contemplated by the Kash Asset Purchase Agreement is in the best interests of the Debtors' creditors and estates.

1    H.    Pursuant to the Court's Compromise Motion Order the Court has authorized Kash CA to make a credit bid to acquire the Purchased Assets up to the full amount of the Zions Secured Claim acquired by Kash CA from Zions.  In accordance with the provisions of the Compromise Motion Order, Kash CA's making pursuant to Kash Asset Purchase Agreement a credit bid to acquire the Purchased Assets is fair and appropriate and is valid and authorized pursuant to section 363(k) of the Bankruptcy Code.

I.    Good cause exists to authorize the Debtors to sell the Purchased Assets free and clear of all Liens of any kind or nature because the requirements set forth in section 363(f) of the Bankruptcy Code, including section 363(f)(4), have been satisfied.

J.    The Kash Asset Purchase Agreement was negotiated, proposed and entered into by and among the Debtors and Kash CA without collusion, in good faith, and from arm's-length bargaining positions.  There has been no fraud or collusion with respect to the sale process, or any manipulation with respect to the bidding or Purchase Price with respect to the Sale Transaction among the Debtors and Kash CA.  Neither any Debtor nor Kash CA has engaged in any conduct that would cause or permit the Kash Asset Purchase Agreement, or the Sale Transaction contemplated thereby, to be invalidated or avoided under section 363(n) of the Bankruptcy Code.  Accordingly, upon consummation of the Sale Transaction contemplated by the Kash Asset Purchase Agreement, Kash CA will be a buyer in "good faith" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

K.    Good cause exists to authorize the Debtors to execute any document, and to take any act, appropriate to effectuate the Kash Asset Purchase Agreement and the agreements ancillary thereto, including, without limitation, the Purchaser's Subordination Agreement, the Sellers' Subordination Agreement and the Note and security agreement contemplated by the Kash Asset Purchase Agreement (collectively, "Ancillary

Agreements"). The Ancillary Agreements are incorporated into the Kash Asset Purchase Agreement and are integral and inseparable components of the Sale Transaction contemplated by the Kash Asset Purchase Agreement.

L.  In light of the Debtors' need to consummate the sale of the Purchased Assets expeditiously in order to preserve and maximize value for the Debtors' estates and their creditors, good cause exists to waive the 14-day stay of orders provided by Rules 6004(h) and 6006(d) of the Federal Bankruptcy Rules.

M.  Good cause exists to overrule the TTB's Opposition, in part, because: (i) the Debtors have demonstrated that the Debtors' Sale Transaction with Kash CA is in the best interests of the Debtors' creditors and that the Debtors have exercised sound business judgment in entering into and seeking to consummate the Sale Transaction; and (ii) the TTB has not objected to the terms or conditions of the Kash Asset Purchase Agreement or the adequacy of the Purchase Price provided for by the Kash Asset Purchase Agreement.

N.  By the Sale Motion, the Debtors request that the Court authorize the sale only of property of the Debtors' estates under section 541 of the Bankruptcy Code, and not any property of any non-debtor entity. The Purchased Assets to be sold and assigned to Kash CA pursuant to the Kash Asset Purchase Agreement have been adequately disclosed and identified.

O.  All payments or other consideration to be provided by Kash CA pursuant to the Kash Asset Purchase Agreement and the Purchaser's Subordination Agreement, including, without limitation, the release by Kash CA of its first-priority liens encumbering Excluded Assets (including, without limitation, the Debtors' cash and cash equivalents and the TTB Levied Funds) and Kash CA's payment of the Installment Payments under the Note to be executed by Kash CA pursuant to the Kash Asset Purchase Agreement and the Purchaser's Subordination Agreement, will derive from a release of Kash CA's first-priority liens encumbering the Debtors' assets, or the proceeds of such

1 liens, and therefore is property belonging solely to Kash CA, and not any property of any
2 Debtor's estate.

3     P.    The Committee has given its approval of the Sale Motion in reliance on,
4 and contingent upon, the Court's approval of the Purchaser's Subordination Agreement.

5     Q.    Good cause exists to approve the Purchaser's Subordination Agreement in
6 connection with and in furtherance of the Sale Transaction. The Debtors have submitted
7 legal authority and evidence adequate for the Court to approve the Purchaser's
8 Subordination Agreement.

9     R.    Based upon the evidentiary record before the Court, the Howell Lease
10 Assignment Consent, the 823 D Street Lease Assignment Consent and the lack of any
11 opposition, good cause exists to authorize the Debtors to assign to Kash CA the Assigned
12 Contracts, in accordance with the provisions of the Sale Motion.

13     S.    Based upon the evidentiary record before the Court, and the lack of any
14 opposition, good cause exists to authorize the Debtors to reject unexpired leases and
15 executory contracts not assigned to Kash CA, and to abandon assets not sold or assigned
16 to Kash CA, in accordance with the provisions of the Sale Motion.

17     T.    Based upon the evidentiary record before the Court, and the lack of any
18 opposition, good cause exists to authorize the Debtors to enter into, and to perform their
19 obligations under, the Sellers' Subordination Agreement (Exhibit "5" to the Initial Issa
20 Declaration), in connection with and in furtherance of the Sale Transaction.

21     U.    The Committee supports the approval of the Sale Motion.
22     V.    Zions supports the approval of the Sale Motion.
23     W.    No opposition has been filed with respect to the Sale Motion, except only
24 for the Opposition filed by the TTB.
25     X.    The TTB has filed no proof of claim against any Debtor, except for HMT.
26 The TTB's claim is disputed in HMT's Schedules of Assets and Liabilities [Docket

1  No. 28]. The Debtors and the Committee have filed jointly an objection to the TTB's
2  claim against HMT [Docket No. 668], seeking to disallow the TTB's claim.
3  Based upon the record in these cases, the findings of fact and conclusions of law set forth
4  hereinabove, pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 6004,
5  6006, 7052 and 9014 of the Federal Bankruptcy Rules,
6  **IT IS HEREBY ORDERED THAT:**
7  1.  The TTB Opposition is hereby overruled.
8  2.  The Sale Motion is hereby granted in its entirety. All entities given notice of the
9  Sale Motion that failed to object to the Sale Motion are hereby deemed to consent to the relief
10 granted hereby.
11 3.  All of the terms and conditions of the Kash Asset Purchase Agreement are hereby
12 approved, and the Debtors are hereby authorized, pursuant to section 105(a), sections 363(b), (f)
13 and (m) and section 365 of the Bankruptcy Code, to sell and to assign to Kash CA the Purchased
14 Assets, pursuant to the terms and conditions of the Kash Asset Purchase Agreement. The
15 Purchased Assets shall include all assets and properties of the Debtors, except only for the
16 Excluded Assets. No assets or properties of non-debtors, Twin River and Big Canyon, true,
17 correct and complete lists of which assets and properties are attached hereto, collectively, as
18 Exhibit "2" and are incorporated herein by this reference, are Purchased Assets or are included in
19 the sale and assignment of assets and properties to Kash CA.
20 4.  Upon the entry of this Order, the Kash Asset Purchase Agreement and the
21 Ancillary Agreements shall be effective and binding upon the Debtors and Kash CA in
22 accordance with the terms and conditions thereof, and, upon the Closing of the Sale Transaction,
23 the Debtors and Kash CA shall comply with and perform timely their obligations thereunder.
24 5.  Pursuant to section 363(f) of the Bankruptcy Code, the sale and assignment of the
25 Purchased Assets to Kash CA shall be free and clear of all Liens of any nature whatsoever, except
26 only for the Assumed Liabilities set forth expressly in Section 2.3 of the Kash Asset Purchase
27 Agreement. Without limiting the generality of the foregoing, the sale of the Purchased Assets to
28

Kash CA shall be free and clear of all Excluded Liabilities set forth in Section 2.4 of the Kash Asset Purchase Agreement including, without limitation, tax claims (including, without limitation, any claims asserted by the TTB), Environmental Liabilities, successor liability claims, litigation claims and claims related to the administration of the Debtors' Chapter 11 cases.

6. The transfer and sale of the Purchased Assets pursuant to this Order and the Kash Asset Purchase Agreement shall vest Kash CA with good title to the Purchased Assets, free and clear of all Liens of any nature whatsoever, and any and all other rights, claims and interests of any nature whatsoever that may be asserted by any person or entity, including, without limitation, any entity asserting a secured claim against the Purchased Assets. Any entity hereafter asserting a Lien against the Purchased Assets shall be, and hereby is, forever barred and enjoined from asserting such Lien against the Purchased Assets and against Kash CA.

7. Kash CA is not, as a result of any acts taken by it in connection with the purchase of the Purchased Assets, (i) a successor to any Debtor, (ii) a continuation or substantial continuation of any Debtor or any enterprise of any Debtor, or (iii) the alter ego of any Debtor.

8. Kash CA shall have no liability to any creditor or to any other person or entity as a purported successor to any Debtor. The consummation of the Sale Transaction provided by the Kash Asset Purchase Agreement shall not subject Kash CA to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against any Debtor or any other person or entity by reason of the Sale Transaction, including, without limitation, any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever based on successor or transferee liability.

9. Except as otherwise set forth in the Kash Asset Purchase Agreement, the sale to Kash CA of the Purchased Assets shall be "AS IS," "WHERE IS," and "WITH ALL FAULTS" without any representations or warranties of any kind whatsoever made by the Debtors with respect to the Purchased Assets.

10. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are hereby authorized and empowered to:  (i) perform under, consummate, and implement the Kash Asset Purchase Agreement and the Ancillary Agreements; (ii) execute all additional instruments and documents that may be reasonably necessary or desirable to implement the Kash Asset Purchase Agreement and the Ancillary Agreements and the transactions contemplated thereby; (iii) take all further acts as may be necessary or appropriate for the purposes of transferring, granting, or conveying the Purchased Assets to Kash CA pursuant to the provisions of the Kash Asset Purchase Agreement; (iv) take such other and further acts as are contemplated by the Kash Asset Purchase Agreement or an Ancillary Agreement or reasonably required to fulfill the Debtors' obligations under the Kash Asset Purchase Agreement or an Ancillary Agreement, all without further order of this Court.

11. The Kash Asset Purchase Agreement, any Ancillary Agreement, any document or other instrument in connection with the Sale Transaction may be modified, amended, or supplemented by the Debtors and Kash CA in a writing signed by such parties and approved in writing by the Committee, without further order of this Court, provided that any such modification, amendment or supplement does not have a materially adverse effect on the Debtors' estates or the claims of the TTB.  The Debtors shall provide to the Committee and to the TTB written notice of any proposed modification, amendment or supplement that is likely to have a materially adverse effect on the Debtors' estates or the claims of the TTB.  The Committee and/or the TTB shall have two (2) business days to object thereto.  If the Committee or the TTB fails to object timely to a proposed modification, amendment or supplement, such modification, amendment or supplement shall be deemed to be approved.  If the Committee or the TTB objects timely to the proposed modification, amendment or supplement, the Debtors and the objecting party shall request jointly that the Court schedule a telephonic hearing on the objection to be heard on the first date thereafter available on the Court's calendar, and the proposed modification, amendment or supplement shall not be effectuated pending the Court's determination of the merits of the objection.

12. The Debtors are hereby authorized pursuant to section 365 of the Bankruptcy Code to assign to Kash CA those Assigned Contracts set forth in Schedule 2.1(c) of the Kash Asset Purchase Agreement. The Debtors are hereby authorized to pay, and shall pay, to 823 D Street $4,829.42 as and for payment in full of the Cure Amount with respect to HMT's assumption and assignment to Kash CA of HMT's real property lease with 823 D Street. No other Cure Amount shall be owed by the Debtors in connection with the assumption and assignment of the Assigned Contracts to Kash CA.

13. Each Debtor is hereby authorized pursuant to section 365 of the Bankruptcy Code to reject any unexpired leases and executory contracts not assigned to Kash CA pursuant to the Kash Asset Purchase Agreement, as may be determined by the Debtor in the exercise of its reasonable business judgment. Notice of any rejection of an unexpired lease or executory contract shall be deemed to be effective immediately upon the Debtor's giving written notice thereof to the non-debtor counterparty to such executory contract or unexpired lease.

14. Each Debtor is hereby authorized to abandon any asset not sold or assigned to Kash CA pursuant to the Kash Asset Purchase Agreement that is of inconsequential value or that is burdensome to the Debtor's estate, as may be determined by the Debtor in the exercise of its reasonable business judgment. Notice of any such abandonment shall be deemed to be effective immediately upon the Debtor's giving written notice thereof.

15. The terms and conditions of the Purchaser's Subordination Agreement are hereby approved in their entirety, and the Debtors are hereby authorized to enter into, and to perform their obligations under, the Purchaser's Subordination Agreement, a copy of which is attached as Exhibit "4" to Initial Issa Declaration. Kash CA is hereby authorized and directed to comply with Kash CA's obligations under the Purchaser's Subordination Agreement, including, without limitation, by providing the carve-outs and other financial accommodations provided for thereby.

16. The terms and conditions of the Sellers' Subordination Agreement are hereby approved in their entirety, and the Debtors are hereby authorized to enter into, and to perform

1 their obligations under, the Sellers' Subordination Agreement, a copy of which is attached as
2 Exhibit "5" to the Initial Issa Declaration.

3     17.    The failure to include in this Order any particular provision of the Kash Asset
4 Purchase Agreement or any Ancillary Agreement shall not diminish or impair the effectiveness of
5 that provision, it being the intent of the Court, Kash CA and the Debtors that the Kash Asset
6 Purchase Agreement and the Ancillary Agreements be authorized and approved in their entirety.

7     18.    Until the Debtors' cases are closed or dismissed, this Court shall retain exclusive
8 jurisdiction to (i) enforce and implement the terms and provisions of the Kash Asset Purchase
9 Agreement and the Ancillary Agreements, (ii) compel the Debtors or Kash CA to perform their
10 respective obligations under the Kash Asset Purchase Agreement and the Ancillary Agreements,
11 (iii) resolve any disputes, controversies or claims arising out of or relating to the Kash Asset
12 Purchase Agreement, the Ancillary Agreements or the transactions contemplated thereby, and (iv)
13 interpret, implement and enforce the provisions of the Kash Asset Purchase Agreement, the
14 Ancillary Agreements and this Order.  Without limiting the generality of the foregoing, the
15 Debtors, and any successor to the Debtors, and Kash CA shall have the right to request, on such
16 notice as may be appropriate, any relief and remedies that may be appropriate to enforce the
17 provisions of this Order, including, without limitation, injunctive relief, a contempt citation,
18 sanctions and other damages against any creditor or other party that may violate the provisions
19 hereof.

20     19.    Kash CA is a buyer in good faith, and, as such, shall be entitled to all of the
21 protections of section 363(m) of the Bankruptcy Code if this Order or any authorization contained
22 herein is reversed or modified on appeal.  Pursuant to section 363(m) of the Bankruptcy Code,
23 absent a stay of this Order pending appeal entered prior to the Closing of the Sale Transaction
24 contemplated by the Kash Asset Purchase Agreement, the reversal or modification on appeal of
25 this Order, or any provision hereof, shall not affect the validity of the Sale Transaction (including,
26 without limitation, the validity of the Kash Asset Purchase Agreement and the Ancillary
27 Agreements), if the Closing of the Sale Transaction occurs prior to such stay, reversal or
28

modification on appeal.  The Debtors shall file and serve notice of the Closing of the Sale Transaction as soon as practicable after the Closing of the Sale Transaction.

20. The validity of the Sale Transaction contemplated by the Kash Asset Purchase Agreement approved hereby shall not be affected by the appointment of a trustee, the dismissal of a Debtor's case, or the conversion of a Debtor's case to one under Chapter 7 of the Bankruptcy Code.

21. Any conflict between the terms and provisions of this Order, and the Kash Asset Purchase Agreement or an Ancillary Agreement, shall be resolved in favor of this Order.

22. This Order shall be binding in all respects upon Kash CA, the Debtors, all creditors of the Debtors, including, without limitation, those creditors of a Debtor who purport to hold contingent, unliquidated or disputed claims (including, without limitation, the TTB), all holders of equity interests in a Debtor, all holders of Liens, and any trustee that may be appointed in a Debtor's Chapter 11 case or upon any conversion of a Debtor's case to one under Chapter 7 of the Bankruptcy Code.  Nothing contained in any Chapter 11 plan confirmed in a Debtor's case, or in any order confirming any such Chapter 11 plan, shall conflict with or derogate from the provisions of this Order and this Order shall control to the extent of any such conflict or derogation.

23. The Debtors, Kash CA, and all creditors, governmental units and other parties-in-interest are bound by, and shall comply with, the provisions of this Order and are hereby directed to take any and all acts appropriate to facilitate the prompt consummation of the transactions approved hereby.

24. The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified to the extent necessary or appropriate to implement the provisions of this Order and the terms of the Kash Asset Purchase Agreement and the Ancillary Agreements.

25. This Order is and shall be (i) effective as a determination that, at the Closing, any and all Liens existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged and terminated as claims against the Purchased Assets and/or Kash CA, and (ii) binding upon and shall govern the acts of all persons or entities, including,

1  without limitation, all filing agents, filing officers, title agents, title companies, recorders of

2  mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state,

3  federal, state, and local officials and all other persons and entities who may be required by

4  operation of law, the duties of their office, or contract, to accept, file, register or otherwise record

5  or release any documents or instruments, or who may be required to report or insure any title or

6  state of title in or to any of the Purchased Assets.

7      26.    Notwithstanding the provisions of Rule 6004(h) or Rule 6006(d) of the Federal

8  Bankruptcy Rules, this Order shall be effective immediately after its entry absent a stay pending

9  appeal of this Order.

10     27.    Good cause, valid reasons and the record of these cases amply support entry of this

11  Order.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. §

12  158(a).  This Order shall be effective, and the parties may consummate the Sale Transaction

13  (including, without limitation, the Kash Asset Purchase Agreement and the Ancillary

14  Agreements) approved by this Order, immediately upon entry of this Order.

15     28.    Except as set forth expressly herein to the contrary, no further notice or Court

16  appearance shall be necessary to effectuate the foregoing.

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION RE: RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

    ____    The court has waived the requirement set forth in LR 9021(b)(1).

    ____    No party appeared at the hearing or filed an objection to the motion.

    _X_    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

| | |
|---|---|
| Thomas R. Fawkes, Esq.<br>Goldstein & McClintock, LLLP<br>Attorneys for Official Committee of Unsecured Creditors | _/s/ Thomas R. Fawkes_<br>Approval/Disapproval |
| Gerald P. Kennedy, Esq.<br>Procopio, Cory Hargreaves &Savitch, LLP<br>Attorney for Kash CA | _/s/ Gerald P. Kennedy_<br>Approval/Disapproval |
| Todd C. Ringstad, Esq.<br>Ringstad & Sanders, LLP<br>Attorney for David C. Howell | _/s/ Todd Ringstad_<br>Approval/Disapproval |
| Boris Kukso, Esq.<br>Tax Division of the U.S. Department of the Treasury<br>Alcohol & Tobacco Tax and Trade Bureau<br>Attorney for TTB | _/s/ Boris Kukso_<br>Approval/Disapproval |
| Robert E. Opera, Esq.<br>Winthrop Couchot Golubow Hollander, LLP<br>Attorney for Debtor | _/s/ Robert E. Opera_<br>Approval/Disapproval |

####

MAINDOCS-#242187-v4-HMT_-_Order_Sale